David H. FOXMAN and Dorothy A. Foxman, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Horace W. GRENELL and Judith Grenell, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

Norman B. JACOBOWITZ and Laura Jacobowitz, Respondents.

Nos. 14981, 15059, 15061.

United States Court of Appeals Third Circuit.

Argued March 19, 1965.

Decided Nov. 15, 1965.

Richard L. Braunstein, Washington, D. C. (Bernard J. Long, Dow, Lohnes & Albertson, Washington, D. C., on the brief), for David and Dorothy Foxman.

Victor R. Wolder, New York City, for Horace and Judith Grenell.

Sidney L. Cramoy, New York City, for Norman and Laura Jacobowitz.

Michael K. Cavanaugh, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attorneys, Department of Justice, Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Before McLAUGHLIN, HASTIE and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

This matter is before the Court on petitions to review decisions of the Tax Court, 41 T.C. 535, in three related cases consolidated for the purpose of hearing. The petitions of Foxman and Grenell [1] challenge the decision as erroneous only as it relates to them. The petition of the Commissioner seeks a review of the decision as it relates to Jacobowitz only if it is determined by us that the Tax Court erred in the other two cases.

The cases came before the Tax Court on stipulations of fact, numerous written exhibits and the conflicting testimony of several witnesses, including the taxpayers. The relevant and material facts found by the Tax Court are fully detailed in its opinion. We repeat only those which may contribute to an understanding of the narrow issue before us.

As the result of agreements reached in February of 1955, and January of 1956, Foxman, Grenell and Jacobowitz became equal partners in a commercial enterprise which was then trading under the name of Abbey Record Manufacturing Company, hereinafter identified as the Company. They also became equal shareholders in a corporation known as Sound Plastics, Inc. When differences of opinion arose in the spring of 1956, efforts were made to persuade Jacobowitz to withdraw from the partnership. These efforts failed at that time but were resumed in March of 1957. Thereafter the parties entered into negotiations which, on May 21, 1957, culminated in a contract for the acquisition of Jacobowitz's interest in the partnership of Foxman and Grenell. The terms and conditions, except one not here material, were substantially in accord with an option to purchase offered earlier to Foxman and Grenell. The relevant portions of the final contract are set forth in the Tax Court's opinion.

The contract, prepared by an attorney representing Foxman and Grenell, referred to them as the "Second Party," and to Jacobowitz as the "First Party." We regard as particularly pertinent to the issue before us the following clauses:

"WHEREAS, the parties hereto are equal owners and the sole partners of ABBEY RECORD MFG. CO., a partnership, * * *, and are also the sole stockholders, officers and directors of SOUND PLASTICS, INC., a corporation organized under the laws of the State of New York; and

"WHEREAS, the first party is desirous of selling, conveying, transferring and assigning all of his right, title and interest in and to his one-third share and interest in the said ABBEY to the second parties; and

"WHEREAS, the second parties are desirous of conveying, transferring and assigning all of their right, title and interest in and to their combined two-thirds shares and interest in SOUND PLASTICS, INC., to the first party;

"Now, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

"*First*: The second parties hereby purchase all the right, title, share and interest of the first party in ABBEY and the first party does hereby sell, transfer, convey and assign all of his right, title, interest and share in ABBEY and in the moneys in banks, trade names, accounts due, or to become due, and in all other assets of any kind whatsoever, belonging to said ABBEY, for and in consideration of the following. * * *"

The stated consideration was cash in the sum of $242,500; the assignment by Foxman and Grenell of their stock in Sound Plastics; and the transfer of an automobile, title to which was held by the

---

1. Their respective wives joined in the petitions, but only because they were parties to joint tax returns. This also applies to the wife of Jacobowitz.

Company. The agreement provided for the payment of $67,500 upon consummation of the contract and payment of the balance as follows: $67,500 on January 2, 1958, and $90,000 in equal monthly installments, payable on the first of each month after January 30, 1958. This balance was evidenced by a series of promissory notes, payment of which was secured by a chattel mortgage on the assets of the Company. This mortgage, like the contract, referred to a sale by Jacobowitz of his partnership interest to Foxman and Grenell. The notes were executed in the name of the Company as the purported maker and were signed by Foxman and Grenell, who also endorsed them under a guarantee of payment.

The down payment of $67,500 was by a cashier's check which was issued in exchange for a check drawn on the account of the Company. The first note, in the amount of $67,500, which became due on January 2, 1958, was timely paid by a check drawn on the Company's account. Pursuant to the terms of an option reserved to Foxman and Grenell, they elected to prepay the balance of $90,000 on January 28, 1958, thereby relieving themselves of an obligation to pay Jacobowitz a further $17,550, designated in the contract as a consultant's fee. They delivered to Jacobowitz a cashier's check which was charged against the account of the Company.

In its partnership return for the fiscal year ending February 28, 1958, the Company treated the sum of $159,656.09, the consideration received by Jacobowitz less the value of his interest in partnership property, as a guaranteed payment made in liquidation of a retiring partner's interest under § 736,(a) (2) of the Internal Revenue Code of 1954, Title 26 U.S.C.A. This treatment resulted in a substantial reduction of the distributive shares of Foxman and Grenell and consequently a proportionate decrease in their possible tax liability. In his income tax return Jacobowitz treated the sum of $164,356.09, the consideration less the value of his partnership interest,

as a long term capital gain realized upon the sale of his interest. This, of course, resulted in a tax advantage favorable to him. The Commissioner determined deficiencies against each of the taxpayers in amounts not relevant to the issue before us and each filed separate petitions for redetermination.

The critical issue before the Tax Court was raised by the antithetical positions maintained by Foxman and Grenell on one side and Jacobowitz on the other. The former, relying on § 736(a) (2), supra, contended that the transaction, evidenced by the contract, constituted a liquidation of a retiring partner's interest and that the consideration paid was accorded correct treatment in the partnership return. The latter contended that the transaction constituted a sale of his partnership interest and, under § 741 of the Code, 26 U.S.C.A., the profit realized was correctly treated in his return as a capital gain. The Tax Court rejected the position of Foxman and Grenell and held that the deficiency determinations as to them were not erroneous; it sustained the position of Jacobowitz and held that the deficiency determination as to him was erroneous. The petitioners Foxman and Grenell challenge that decision as erroneous and not in accord with the law.

It appears from the evidence, which the Tax Court apparently found credible, that the negotiations which led to the consummation of the contract of May 21, 1957, related to a contemplated sale of Jacobowitz's partnership interest to Foxman and Grenell. The option offered to Foxman and Grenell early in May of 1957, referred to a sale and the execution of "a bill of sale" upon completion of the agreement. The relevant provisions of the contract were couched in terms of "purchase" and "sale." The contract was signed by Foxman and Grenell, individually, and by them on behalf of the Company, although the Company assumed no liability thereunder. The obligation to purchase Jacobowitz's interest was solely that of Foxman and Grenell. The chattel mortgage

on the partnership assets was given to secure payment.

Notwithstanding these facts and the lack of any ambiguity in the contract, Foxman and Grenell argue that the factors unequivocally determinative of the substance of the transaction were: the initial payment of $67,500 by a cashier's check issued in exchange for a check drawn on the account of the Company; the second payment in a similar amount by check drawn on the Company's account; the execution of notes in the name of the Company as maker; and, the prepayment of the notes by cashier's check charged against the Company's account.

This argument unduly emphasizes form in preference to substance. While form may be relevant "[t]he incidence of taxation depends upon the substance of a transaction." Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945); United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 455, 70 S.Ct. 280, 94 L. Ed. 251 (1950). The "transaction must be viewed as a whole, and each step, from the commencement of negotiations" to consummation, is relevant. Ibid. Where, as here, there has been a transfer and an acquisition of property pursuant to a contract, the nature of the transaction does not depend solely on the means employed to effect payment. Ibid.

It is apparent from the opinion of the Tax Court that careful consideration was given to the factors relied upon by Foxman and Grenell. It is therein stated, 41 T.C. at page 553:

"These notes were endorsed by Foxman and Grenell individually, and the liability of [the Company] thereon was merely in the nature of security for their primary obligation under the agreement of May 21, 1957. The fact that they utilized partnership resources to discharge their own individual liability in such manner can hardly convert into a section 736 'liquidation' what would otherwise qualify as a section 741 'sale'."

\* \* \* \* \* \*

" \* \* \* the payments received by Jacobowitz were in discharge of their [Foxman's and Grenell's] obligation under the agreement, and not that of [the Company.] It was they who procured those payments in their own behalf from the assets of the partnership which they controlled. The use of [the Company] to make payment was wholly within their discretion and of no concern to Jacobowitz; his only interest was payment."

We are of the opinion that the quoted statements represent a fair appraisal of the true significance of the notes and the means employed to effect payment.

When the members of the partnership decided that Jacobowitz would withdraw in the interest of harmony they had a choice of means by which his withdrawal could be effected. They could have agreed inter se on either liquidation or sale. On a consideration of the plain language of the contract, the negotiations which preceded its consummation, the intent of the parties as reflected by their conduct, and the circumstances surrounding the transaction, the Tax Court found that the transaction was in substance a sale and not a liquidation of a retiring partner's interest. This finding is amply supported by the evidence in the record. The partners having employed the sale method to achieve their objective, Foxman and Grenell cannot avoid the tax consequences by a hindsight application of principles they now find advantageous to them and disadvantageous to Jacobowitz.

The issue before the Tax Court was essentially one of fact and its decision thereon may not be reversed in the absence of a showing that its findings were not supported by substantial evidence or that its decision was not in accord with the law. Cleveland v.

C. I. R., 335 F.2d 473, 477 (3rd Cir. 1964), and the cases therein cited. There has been no such showing in this case.

The decisions of the Tax Court will be affirmed.