Emory K. CRENSHAW and Edgar Lee Nalley, as Executors of the Estate of Frances Wood Wilson, Deceased

v.

UNITED STATES of America.

Civ. A. No. 12392.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 29, 1970.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for plaintiff.

John W. Stokes, Jr., U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

This is an action against the United States for tax refund in the amount of $47,128.92, representing income tax and accrued interest thereon which allegedly was erroneously and illegally collected by defendant in 1967 from Frances Wood Wilson, now deceased, for the calendar year 1962.

The controversy centers around a transaction in 1962 whereby Frances Wood Wilson disposed of a partnership interest she possessed, receiving in return therefor an interest in certain investment property owned by the partnership. Taxpayer Wilson treated the transaction as a distribution of partnership property in liquidation of her partnership interest, and pursuant to the provisions of Section 731 of the Internal Revenue Code, 26 U.S.C. § 731, recognized no gain on the transaction. The Commissioner of Internal Revenue subsequently determined that the "retirement or disposition of the partnership interest" should be treated as a taxable capital transaction and that taxpayer therefore owed an income tax deficiency of $38,518.29 for the calendar year 1962. The alleged deficiency of $47,128.92, including interest, was paid by taxpayer on August 3, 1967, and on April 25, 1968, a claim for refund was filed by plaintiffs on behalf of taxpayer's estate. The claim was disallowed in full and this suit resulted. The case is now before the court for consideration of motions for summary judgment by both plaintiffs and defendant.

In order to understand the Government's contention that taxpayer sold or exchanged her partnership interest to the continuing partners, it is necessary to examine—at least to a limited extent—the background and surrounding circumstances of the transaction in question. These facts, like those set forth above, are not disputed, but the parties disagree as to the effect of the series of transactions involved.

In November 1962 taxpayer possessed a $5\frac{9}{225}$th interest in a partnership known as Pine Forest Associates—a partnership which had been formed in 1952 with four partners but which had been reduced to three partners in May 1968 when partners Frances Wilson, Leon M. Blair, and Julian H. Blair purchased the interest of Martha Wilson for $200,000. Some time prior to November 1962 Leon M. Blair informed taxpayer's financial adviser, Emory K. Crenshaw, that he (Blair) wished to purchase taxpayer's interest in the partnership. Mr. Crenshaw has testified that after thinking about the matter he concluded that it would be to taxpayer's advantage to dispose of the partnership interest but since she had a great deal of cash already the transaction should be one which would provide her with income-producing property instead of cash. Later discussions revealed that Mr. Blair did not have any such property but Mr. Crenshaw learned that a suitable piece of property was then owned by and could be obtained from the estate of taxpayer's husband. After consulting with taxpayer's attorneys as to how taxpayer could obtain the income-producing property she desired, Mr. Crenshaw proposed to Mr. Blair a method by which Blair could obtain control over taxpayer's partnership interest without purchasing it from taxpayer; the plan was approved and on November 30, 1962, the following individual actions occurred:

(1) Taxpayer withdrew from the Pine Forest Associates partnership, receiving for her interest an undi-

vided $^{50}\!/_{225}$th interest in the real estate owned by the partnership (i. e., Pine Forest Apartments), without liability for payment of any debts, claims or liabilities to which the apartments were subject.

(2) Taxpayer exchanged her undivided $^{50}\!/_{225}$th interest in the Pine Forest Apartments for the Oglethorpe Shopping Center, which was owned by the estate of her deceased husband, Fred B. Wilson.

(3) The estate of Fred B. Wilson then sold the undivided interest in Pine Forest Apartments to Blair Investment Company for $200,-000.

(4) Blair Investment Company contributed its interest in Pine Forest Apartments to the Pine Forest Associates partnership and thereby became a partner itself.

The Government concedes that if viewed as a separate transaction the partnership distribution to the taxpayer would be a valid liquidating distribution under §§ 731 and 736(b), and that the subsequent exchange was a valid one, but it contends that the distribution cannot be viewed as a separate transaction; rather, it argues that the foregoing trans-

actions, all of which occurred on the same day, constituted in substance a "sale or exchange" of Frances Wilson's partnership interest, under 26 U.S.C. § 741, rather than a bona fide liquidating distribution under §§ 731 and 736 (b), as contended by plaintiffs, and it was on that basis that nonrecognition of capital gains was disallowed.[1] The Government looks to the end result, finds that at the conclusion of transaction No. 4, *supra*, the partnership was composed of the two continuing partners and a corporation of which those partners were sole shareholders, and that the partnership assets were exactly the same as they had been before taxpayer disposed of her interest. From this the Government concludes that taxpayer's disposition of her interest was, in effect, by way of a sale or exchange to the continuing partners. The court rejects that contention for it completely ignores what this court finds to be the most important factors in determining whether a retiring partner's interest was sold or whether it was liquidated: (1) whether the partner disposed of his entire interest in the partnership,[2] and (2) whether the partners themselves chose to use the "sale route" or the "liquidation route."

In rejecting the Government's contention that taxpayer sold her part-

1. Section 741 of the Internal Revenue Code, 26 U.S.C. § 741, provides as follows:

"In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset * * * [with one exception which is not relevant to the instant case]."

Section 731 provides in relevant part:

"(a) Partners.—In the case of a distribution by a partnership to a partner—

(1) gain shall not be recognized to such partner, except to the extent that any *money* distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution * * *" [Emphasis added.]

Section 736(b) clarifies what is meant by a "distribution by a partnership":

"Payments made in liquidation of the interest of a retiring partner shall, to the extent such payments * * * are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a *distribution by the partnership* * * *." (Emphasis added.)

Section 1.736–1 of the Treasury Regulations on Income Tax (1954 Code), provide further that § 736 applies "only to payments made by the partnership and not to transactions between the parties. Thus, a sale by partner A to partner B of his entire one-fourth interest in partnership ABCD would not come within the scope of section 736."

2. Merten's Law of Federal Income Taxation. *See* Code Commentary, § 731–735 :3.

nership interest, the court notes that the Government is correct in asserting that it is the substance of a transaction rather than its mere form which is controlling for purposes of taxation. But this statement usually has been made when the court was dealing with a transaction which was itself a sham. For example, in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), and Bazley v. Commissioner of Internal Revenue, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782 (1947)—both of which the Government has cited—the court was faced with taxpayers who claimed the tax benefits flowing from corporate reorganization when the reorganizations themselves were shams entered into not for corporate business purposes but solely to permit shareholders to escape tax liability on otherwise taxable gains. Just as in the foregoing cases the benefits derived from corporate reorganization are dependent upon there being an actual reorganization for business purposes, in cases involving termination of a partnership interest the benefit of deferred recognition of capital gains is dependent upon whether partnership property is transferred to the retiring partner in complete liquidation of that partner's partnership interest. If the taxpayer in some manner retains his partnership interest in substance though not in form then the *Gregory* and *Bazley* decisions are directly in point.

The instant case does not involve reduction or elimination of tax liability but, rather, postponement of tax liability to a later date. Nor does it involve a sham liquidation of a partner's interest. The retiring partner completely disposed of her partnership interest and in exchange therefor she received an interest in property owned by the partnership. True, the partnership itself ended up holding exactly the same properties it had held before, but that is not the determining factor.

Other courts have pointed out that when Congress enacted subchapter K of the 1954 Internal Revenue Code it did so with the idea of achieving simplicity,

flexibility, and equity, and that the flexibility which was sought in the area of disposition of a partner's interest contemplated that the partners would determine for themselves whether they wished to take the "sale route" or the "liquidation route." *E. g.*, Foxman v. Commissioner of Internal Revenue, 352 F.2d 466 (3d Cir. 1965), aff'g. 41 T.C. 535 (1964). Having clearly chosen one route neither the retiring nor the continuing partners can later lay claim to the tax consequences which would have followed from using the other route.

When the courts have been faced with the problem of determining which route the partners did in fact choose, they uniformly have looked to the agreement which formed the basis of the transaction. *E. g.*, Foxman v. Commissioner, *supra*; Kinney v. United States, 228 F. Supp. 656 (W.D.La.1964), aff'd., 358 F.2d 738 (5th Cir. 1966); Andrew O. Stilwell v. Commissioner, 46 T.C. 247 (1966); Miller v. United States, 181 Ct.Cl. 331 (1967).

For example, in Foxman v. Commissioner, *supra* (the case upon which defendant relies most heavily in arguing that taxpayer in the instant case sold her interest), the continuing partners contended that the retiring partner had received a partnership distribution in liquidation of his interest, but both the Tax Court and the Court of Appeals found that the retiring partner had *sold* his interest. The courts noted that the entire tenor of the transaction was that of a sale rather than a liquidation. As the Court of Appeals said:

"[The members of the partnership] had a choice of means by which [the retiring partner's] withdrawal could be effected. They could have agreed inter se on either liquidation or sale. On a consideration of the plain language of the contract the negotiations which preceded its consummation, the intent of the parties as reflected by their conduct, the circumstances surrounding the transaction, the Tax Court found that the transaction was in substance a sale and not a liquida-

**818**

tion of a retiring partner's interest. This finding is amply supported by the evidence in the record. The partners having employed the sale method to achieve their objective, [the continuing partners] cannot avoid the tax consequences by a hind-sight application of principles they now find advantageous to them and disadvantageous to [the retiring partner]."

 In the instant case the plain language of the contract indicates that the partners chose the liquidation route to achieve their objectives, although Mr. Blair had indicated a desire to purchase taxpayer's partnership interest, taxpayer had in effect declined to sell and the agreement entered into with regard to taxpayer's retiring from the partnership was one for liquidation of her interest. Subchapter K makes provision for delaying recognition of capital gains with respect to liquidation of a partner's interest, if the partners choose to do so, just as § 1031 provides for delayed recognition of gain with regard to an exchange of like-kind property. The court does not believe that utilization of both sections in a series of interrelated transactions makes liquidation under § 731 a sham, rather it enables a retiring partner to delay recognition even though the income-producing or investment property which he acquires from the partnership is not the particular property he wishes to hold on a long-term basis. Recognition of this proposition is implicit in the following statement from *Merten's Law of Income Taxation*:

"It is possible for gain to be realized by a distributee of partnership property upon the liquidation of a partnership [interest] where there is a simultaneous disposition by him of property distributed. *The gain, however, is realized with respect to the disposition of the property, not with respect to the distribution.* Thus, where the distributee's interest in a capital asset of the dissolved partnership is sold by him to the other partner in an installment sale, the gain on the sale is realized in the years the payments

therefor are received." 6 Merten's Law of Federal Income Taxation, § 35.54 at 186.

 We believe this to be an accurate statement of the law as it now stands and we hold as a matter of law that Frances Wilson, as retiring partner, received for the partnership in liquidation of her entire partnership interest a liquidating distribution of income-producing property which she subsequently exchanged for property of a like-kind under 26 U.S.C. § 1031. Both transactions had the effect of postponing recognition of capital gains.

Accordingly, plaintiffs' motion for summary judgment is granted.