**Emory K. CRENSHAW, as Executor of the Estate of Frances Wood Wilson, Deceased, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 30798.**

United States Court of Appeals, Fifth Circuit.

Oct. 22, 1971.

Rehearing and Rehearing En Banc Denied Jan. 14, 1972.

Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Joseph M. Howard, Harry Baum, Richard Farber, Attys., Tax Div., Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., for defendant-appellant.

Harold E. Abrams, William A. Burnham, Nelson K. Neiman, II, Atlanta, Ga., for plaintiff-appellee, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., of counsel.

Before JOHN R. BROWN, Chief Judge, COLEMAN and CLARK, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this hotly contested suit for refund of Federal income taxes an ingenious taxpayer and a skeptical tax collector vigorously dispute the legal characterization of an imaginative financial maneuver. If the elaborate multi-stage transaction in question amounted to no more than a "sale or exchange" of a partnership interest under § 741 [1] of the

---

1. "RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE.

In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner.

Internal Revenue Code of 1954, the Commissioner properly assessed and collected a $47,128.92 deficiency. On the other hand, if it was merely a "liquidating distribution" of a partnership interest governed by § 736(b)[2], the District Court correctly granted Taxpayer's motion for summary judgment, 315 F.Supp. 814. Initially we encountered some difficulty with the facts because the Government, while relying upon the well-entrenched "step transaction" doctrine, failed to prove all the steps. Now, with that problem solved and the material facts undisputed, we reverse.

Like most sophisticated schemes for minimizing taxes, the plan was an intricate one. It originated in 1962 while Taxpayer (Mrs. Frances Wood Wilson) was the owner of an undivided $50/225$ interest in the Pine Forest Associates partnership, the remaining interests belonging to Mr. and Mrs. Leon Blair. Mr. Blair approached Taxpayer's attorney with an offer to purchase her partnership interest for cash, and although this proposal was not generally objectionable the attorney responded by pointing out that Taxpayer's general financial position suggested the most appropriate course would be the exchange of her interest for other income-producing property, rather than for cash. Mr. Blair did not then own such property, but subsequent investigation revealed that it could be obtained from the estate of Taxpayer's husband. The stage was then set for the following planned, integrated sequence of steps:

(i) Taxpayer withdrew completely from the partnership in exchange for an undivided $50/225$ interest in a parcel of real estate (the Pine Forest Apartments) owned by the partnership.

(ii) Acting individually and as executrix of her husband's estate, Taxpayer then exchanged her interest in the Pine Forest Apartments for other real property (the Oglethorpe Shopping Center) belonging to the estate.

(iii) Acting solely in her capacity as executrix, Taxpayer transferred the estate's interest in the Pine Forest Apartments for $200,000 cash to the Blairs' newly erected closely held corporation (the Blair Investment Company).

(iv) Finally, the Blair Investment Company transferred its $50/225$ interest in the Pine Forest Apartments to the partnership in exchange for the partnership interest formerly owned by Taxpayer.[3]

---

Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value)." 26 U.S.C.A. § 741.

2. "PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.

\* \* \* \* \*

(b) *Payments for Interest In Partnership.—*

(1) *General rule.*—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a)." 26 U.S. C.A. § 736(b).

Section 761(d) defines "liquidation of a partner's interest" as "the termination of a partner's entire interest in a partnership by means of a distribution, or a series of distributions, to the partner by the partnership."

3. In its order granting Taxpayer's motion for summary judgment the District Court stated that all steps took place on November 30, 1962. However, there is no evidence in the record establishing either the existence or timing of the fourth step, and the only reference to it is in the deposition of Mr. Blair's accountant, who stated that he was not present at the closing on November 30, that he did not know whether all the transactions took place on the same day, but that he "assumed" they did. This led to our post-argument request that the parties stipulate the missing facts regarding this step.

The Government argues that the ultimate consequence of these steps was in every material respect equivalent to that which would have resulted from a taxable sale. The partnership continued to own the same interest in the Pine Forest Apartments that it had purported to distribute in liquidation of Taxpayer's partnership interest, while the Blairs acquired Taxpayer's partnership interest in return for a $200,000 cash outlay. On the other hand, Taxpayer contends that the entire transaction was nothing more than a perfectly legitimate tax-free liquidation followed by an equally legitimate tax-free exchange of like-kind property under § 1031, and that it must therefore be governed by the long-established rule that a taxpayer may properly take advantage of any method allowed by law to avoid taxes. Rupe Investment Corp. v. Commissioner of Internal Revenue, 5 Cir., 1959, 266 F.2d 624, 629.

The critical significance of step (iv) grows out of the two parallel assertions implicit in the Government's theory of the case. First, as has long been recognized, the substance rather than the form of a transaction determines its tax consequences, particularly if the form is merely a convenient device for accomplishing indirectly what could not have been achieved by the selection of a more straightforward route.[4] "To permit the true nature of a

transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981, 985. Transparent devices totally devoid of any non-tax significance to the parties[5] cannot pass muster even though a literal reading of the statutory language might suggest otherwise. Commissioner of Internal Revenue v. P. G. Lake Inc., 1958, 356 U.S. 260, 266–267, 78 S.Ct. 691, 695–696, 2 L.Ed.2d 743, 749. The tax policy of the United States is concerned with realities rather than appearances, and when an illusory facade is constructed solely for the purpose of avoiding a tax burden the astute taxpayer cannot thereafter claim that a court is bound to treat it as being a genuine business arrangement. See Casner v. Commissioner of Internal Revenue, 5 Cir., 1971, 450 F.2d 379, pp. 395–396.

A corollary proposition, equally well established, is that the tax consequences of an interrelated series of transactions are not to be determined by viewing each of them in isolation but by considering them together as component parts of an overall plan. Scroll, Inc. v. Commissioner of Internal Revenue, 5 Cir., 1971, 447 F.2d 612; Waterman S.S. Corp. v. Commissioner of Internal

---

Fortunately the gap in the factual landscape was filled by the stipulation that "the Blair Investment Company transferred its interest in the Pine Forest Apartments to the Pine Forest Associates partnership, and that such transfer took place no later than January 31, 1963, as shown by the partnership return of the Pine Forest Associates filed for its fiscal year ending on that date."

4. Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 288–289, 66 S.Ct. 532, 536–537, 90 L.Ed. 670, 676–677; Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Higgins v. Smith, 1939, 308 U.S. 473, 476–477, 60 S.Ct. 355, 357–358, 84 L.Ed. 406, 410; Griffiths v. Helvering, 1939, 308 U.S. 355, 357–358, 60 S.Ct. 277, 278–279, 84 L.Ed. 319, 322; Minnesota Tea Co. v. Helvering, 1938, 302 U.S. 609, 613–614, 58

S.Ct. 393, 394–395, 82 L.Ed. 474, 477; Gregory v. Helvering, 1935, 293 U.S. 465, 470, 55 S.Ct. 266, 268, 79 L.Ed. 596, 599.

5. In arguing that the technical form of the transaction must prevail here, Taxpayer has not once suggested any conceivable legitimate business purpose that might have dictated the utilization of such a convoluted sequence of preplanned paper exchanges in place of a direct sale for cash. See Knetsch v. United States, 1960, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128. Indeed, Mr. Blair told the Board of Directors of the Blair Investment Corporation that the entire elaborate arrangement was "in net effect the same as his proposal." Mr. Blair's view of the transaction coincides with our own—in every respect except its form it was a sale of the part-

Revenue, 5 Cir., 1970, 430 F.2d 1185, 1193–1194, cert. denied, 1971, 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219; Redwing Carriers, Inc. v. Tomlinson, 5 Cir., 1968, 399 F.2d 652, 658; Davant v. Commissioner of Internal Revenue, 5 Cir., 1966, 366 F.2d 874, cert. denied, 1967, 386 U.S. 1022, 87 S.Ct. 1370, 18 L.Ed.2d 460; Kinney v. United States, 5 Cir., 1966, 358 F.2d 738; United States v. General Geophysical Co., 5 Cir., 1961, 296 F.2d 86, cert. denied, 1962, 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8; Kanawha Gas & Utilities Co. v. Commissioner of Internal Revenue, 5 Cir., 1954, 214 F.2d 685, 691. Taken individually—or a few, but not all, steps at a time—each step in the sequence may very well fit neatly into an untaxed transactional compartment. But the individual tax significance of each step is irrelevant when, considered as a whole, they all amount to no more than a single transaction which in purpose and effect is subject to the given tax consequence.

■ Here the successful application of these principles depends upon a showing by the Government that, while in form these transfers may appear to be no more than a liquidation of a partnership interest followed by a tax-free § 1031 exchange,[6] in substance they are really nothing more than a camouflaged sale of a partnership interest masquerading as a liquidation. But in order to reach this conclusion it must be shown that the character of the transaction is in every respect, other than the superficial and irrelevant one of form, a sale, resulting in precisely those consequences that would have occurred had Taxpayer simply sold her interest in the partnership to the partnership or to the surviving partners for $200,000 cash and then purchased with that money her income-producing property. And it would be an equivalent transaction if the relative positions of the parties following this well-engineered series of exchanges was for all practical purposes substantially the same as it would have been had they chosen the direct rather than the circuitous route.

Obviously what happened here was not equivalent to a sale unless the final step (iv) was consummated—that is, unless Mrs. Wilson's undivided $^{50}\!/_{225}$ interest in the Pine Forest Apartments ultimately found its way back into the partnership now owned by the two Blairs. If it had not, Taxpayer's partnership interest would have been "liquidated," in every conceivable sense of that term, and the complete obliteration of it simply could not have been characterized as a "sale" if none of it had survived to be "sold."

However, the partnership interest *did* survive because, as the parties have stipulated (see note 3, *supra*), it was transferred to the Blair Investment Company in return for its undivided interest in the Pine Forest Apartments. In return for its $200,000 cash payment the corporation (Blair Investment) received exactly the partnership interest it would have obtained by way of a direct purchase from Taxpayer. A sale, not a "liquidation," occurred because what had formerly been Taxpayer's partnership interest was acquired by the Blairs' corporate alter ego and the relative economic positions of the parties were the same as they ultimately would have been had a direct sale taken place.

■ Moreover, the fact of the eventual transfer of the corporation's undivided interest in the Pine Forest Apartments back into the partnership is of crucial evidentiary significance in the final analysis of whether the essence of

nership interest rather than a liquidating distribution.

6. As an alternative ground for reversal the Government argues that the District Court improperly held Taxpayer's exchange of her interest in the apartments for the shopping center to be entitled to the nonrecognition of gain or loss treatment afforded by § 1031, since the apartment property was encumbered by substantial liabilities from which Taxpayer had been relieved. However, since this contention was never presented to the District Court, we do not consider it now.

the arrangement was a "sale" or "liquidation." For while the proper characterization of the transaction may depend upon whether the participants intended to effect a sale or a liquidation, that intention cannot be conclusively presumed merely because the tax-conscious litigant attaches a particular label to his actions. "If the 'sale' is a sham it will be disregarded and a true sale is not made a liquidation by mere words." Miller v. United States, 1967, 181 Ct.Cl. 331, 344, n. 3. In short, merely calling the scheme a liquidation does not make it one.

What does, instead, make the transaction in question a sale is the fact that while theoretically a matter of indifference to Taxpayer, consummation of the step (iv) was practically essential to its success, since without it there might have been no deal. Mr. Blair wanted Taxpayer's partnership interest, and to get it he was willing to go along with a suggested alternative plan which he thought amounted to practically the same thing as a direct sale (see note 5, *supra*). The key was to keep Pine Forest Apartments in the partnership. From the partnership's standpoint, this goal would have been frustrated by transferring (and *keeping*) $50/225$ of it in the separate corporate entity, a result which might have brought about substantial tax disadvantages. From Taxpayer's standpoint, she needed (or desired) income-producing properties which she could not get from the partnership in a liquidating distribution. To acquire such property (Oglethorpe Shopping Center) she needed cash to pay the seller.[7] But it was disadvantageous for her to get the cash on distribution from the partnership. This cash came through the payment of $200,000 by the corporation for the Pine Forest Apartments interest, which soon got back to the partnership exactly as it all began. And her partnership interest

was then owned by the Blairs. Taxwise, taking two to tango, the transaction had to have the equivalent of step (iv) as an indispensable ingredient. The District Court was therefore correct in holding there to be no material issue of fact in controversy, since whether Taxpayer was conscious of step (iv) or not was irrelevant.

Our conclusion is not affected by the undisputed fact that Taxpayer disposed of her entire partnership interest rather than a portion of it. The steps with which we are concerned are those that lead inevitably to a result in every respect equivalent to a taxable sale, even though *individually* any one step may have the technical form of a § 736 liquidation. A step transaction is not magically transformed into something else merely because one of the critical steps was not further subdivided into a piecemeal disposition of the partnership interest, and it makes no difference that interest whatever. The entire transaction on paper may have been flawless, following the initial transfer involved in step (i) Taxpayer ostensibly retained no but it was nevertheless a sale after all was said and done.[8]

Nor do we overlook Taxpayer's clearly correct contention that Congress, in enacting these provisions, has provided an individual with alternative methods for divesting himself of a partnership interest. See Foxman v. Commissioner of Internal Revenue, 3 Cir., 1965, 352 F.2d 466; Paul J. Kelly, 1970, 29 T.C.M. 1090; Andrew O. Stilwell, 1966, 46 T.C. 247. Taxpayers have a choice between selling and liquidating. But they cannot compel a court to characterize the transaction solely upon the basis of a concentration on one facet of it when the totality of circumstances determines its tax status. The most obvious answer to Taxpayer's argument that the parties' characterization is conclusive is that such a result would completely thwart the Congressional policy

---

7. It is just a coincidence that she was both the willing buyer and the willing seller.

8. "A given result at the end of a straight path is not made a different result because

reached by following a devious path." Minnesota Tea Co., *supra*, 302 U.S. at 613, 58 S.Ct. at 394, 82 L.Ed. at 477.

to tax transactional realities rather than verbal labels. The tax is realized on the sale of a partnership interest, and it cannot be avoided by the simple expedient of constructing an admittedly clever series of successive transfers, each non-taxable in itself, that together work the same result. Otherwise, form, rather than substance, would invariably prevail.

The judgment of the District Court is reversed and the cause remanded for entry of judgment in favor of the United States.

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.