ASSOCIATED WHOLESALE GROCERS, INC. and its Subsidiary, Super Market Developers, Inc., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 88-2261-0.

United States District Court, D. Kansas.

Sept. 19, 1989.

H. David Barr, Gage & Tucker, Overland Park, Kan., and Joel B. Voran, Gage & Tucker, Kansas City, Mo., for plaintiffs.

Janice Miller Karlin, Asst. U.S. Atty., Kansas City, Kan., and Thomas D. Sykes, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on plaintiffs' motion for summary judgment and defendant's cross motion for summary judgment. Plaintiffs seek refunds of federal income taxes alleged to have been erroneously or illegally assessed and collected. For the reasons stated below, the defendant's cross motion for summary judgment will be granted and plaintiffs' motion for summary judgment will be denied.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id.* at 323, 106 S.Ct. at 2552.

Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations of denials of his pleading." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor

of either party." *Id.* at 250, 106 S.Ct. at 2511.

The pertinent facts are as follows. In 1976, Super Market Developers, Inc. (hereinafter referred to as "Super Market Developers") made a tender offer for all of the outstanding stock of Weston Investments, Inc. (hereinafter referred to as "Weston"). While the tender offer did not result in a tender of all the remaining shares, Super Market Developers eventually acquired approximately 99.97 percent of the total outstanding shares of Weston. The management of Super Market Developers' parent corporation, Associated Wholesale Growers, Inc. (hereinafter referred to as "Associated Growers"), subsequently made a decision that it was not in their best interests to own and operate grocery stores through subsidiary corporations.

With a desire to dispose of Weston stock in a manner which would allow it to recognize an economic loss, Super Market Developers and Thomas Elder, the manager of a grocery store operated by Weston, agreed upon a merger. Under the terms of the agreement, Weston was merged into Elder Food Mart, Inc. with Elder Food Mart as the surviving corporation. A reorganization agreement between the two parties was also executed. The outstanding shares of Weston were converted into and exchanged for $300,000 in cash and a non-interest bearing demand promissory note made by Elder Food Mart, Inc. in the amount of $9,049,703.00.

Since Super Market Developers' basis in its Weston stock was $11,727,716, it reported a long-term capital loss of $2,353,258 on the transaction in its 1980 consolidated federal income return. A portion of this capital loss was carried back to 1977, 1978 and 1979. Upon review of Associated Growers' consolidated income tax return, the Internal Revenue Service denied the capital loss carry-back and assessed a deficiency for the 1980 tax year, $37,886 of which was due to the denial of capital loss treatment on the disposition of Weston stock.

The precise issue before the court is whether this transaction should be treated for federal income tax purposes as a merger under section 1001(a) as the plaintiff contends, or as a complete liquidation under section 332(a) as the government contends. Section 332(a) of the Internal Revenue Code provides that no gain or loss shall be recognized by a corporation on its receipt of property received in complete liquidation of another corporation. In order for the nonrecognition mandate of § 332(a) to apply, the conditions specified in § 332(b) must be present. *See Kansas Sand & Concrete, Inc. v. Comm'r,* 462 F.2d 805 (10th Cir.1972). Those conditions are:

(1) that the parent corporation (Super Market Developers) must own at least 80 percent of the stock of its subsidiary (Sec. 332(b)(1)); and

(2) that the subsidiary corporation must adopt a plan of liquidation (Sec. 332(b)(1), (2), (3)); and

(3) that there be a complete cancellation or redemption of all of the stock of the subsidiary (Sec. 332(b)(2)); and either

(4) that the subsidiary transfer all of its property within the taxable year (Sec. 332(b)(2)); or

(5) that the distribution by the subsidiary is one of a series of distributions of all of the property of the subsidiary occurring within three years from the close of the year in which the first of such distributions is made. (Sec. 332(b)(3)).

In the case at bar, plaintiffs do not dispute that there was a complete cancellation or redemption of all of the stock of Weston and that all of Weston's property was transferred within the same taxable year. Thus, conditions (3), (4) and (5), described above, are met in this case.

The threshold question then is whether section 332(b)'s first requirement—ownership of at least 80 percent of the subsidiary's stock—has been satisfied. The government argues that Super Market Developers owned 99.97 percent of Weston shares before the execution of the merger and reorganization agreements as well as on the date of the closing of those agreements. Plaintiffs contend that Super Market Developers had sold all of its Weston stock. In support of its position, the government advances the sham transaction

and step transaction doctrines under which it claims the court could find that plaintiffs owned more than 80 percent of Weston's shares at all material times.

Under the step transaction doctrine, the tax consequences of "an interrelated series of transactions are not to be determined by viewing each of them in isolation but by considering them together as component parts of an overall plan." *Security Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1244 (5th Cir.1983) (quoting *Crenshaw v. United States*, 450 F.2d 472, 475 (5th Cir. 1971)). Three forms of the step transaction doctrine have been identified in the case law: (1) the binding commitment test, (2) the interdependence test and (3) the end-result test. *See McDonald's Restaurants of Illinois, Inc. v. Comm'r.*, 688 F.2d 520 (7th Cir.1982); *Redding v. Comm'r.*, 630 F.2d 1169 (7th Cir.1980).

In application of the step transaction doctrine, the "end result" test is invoked most often. Under this test, the ultimate outcome of a "series of interrelated steps controls the tax consequences of the whole." *Atchison, Topeka and Santa Fe R.R. Co. v. United States*, 443 F.2d 147, 151 (10th Cir.1971). When considered individually, each step in the series may escape taxation. The individual tax significance of each step is irrelevant, however, if the steps when viewed as a whole amount to a single taxable transaction. *Crenshaw v. United States*, 450 F.2d 472, 475 (5th Cir.1971).

The second test for determining whether the step transaction doctrine applies is the "interdependence" test. This test focuses on whether "the steps were so interdependent that legal relations created by one transaction would have been fruitless without a completion of the series." *Security Indus. Ins. v. United States*, 702 F.2d at 1244 (quoting Paul & Zimet, *Step Transactions*, in Selected Studies of Federal Taxation, 200, 254 (2d Ser.1938)). Step transaction treatment may be undertaken when "it is unlikely that any one step would have been undertaken except in contemplation of the other integrating acts." *Kuper v. C.I.R.*, 533 F.2d 152, 156 (5th Cir.1976).

The final and most restrictive test allowing for application of the step transaction doctrine is the "binding commitment" test. This test was announced by the Supreme Court in *Comm'r v. Gordon*, 391 U.S. 83, 88 S.Ct. 1517, 20 L.Ed.2d 448 (1968). The Court stated that "if one transaction is to be characterized as a 'first step' there must be a binding commitment to take later steps." *Id.* at 96, 88 S.Ct. at 1524. Subsequent decisions, however, have tended to limit *Gordon* to its facts. *See Security Indus. Ins. Co.*, 702 F.2d at 1245. We therefore will turn to an examination of the facts of this case in light of the "end result" and "interdependence" tests.

The government contends that under the "end result" formulation of the step transaction doctrine that Super Market Developer's "momentary ownership" of the promissory note may be ignored for purposes of determining whether it retained ownership of at least 80 percent of the Weston stock up until the time the Weston assets were received from Elder Food Mart, Inc. In *Granite Trust Co. v. United States*, 238 F.2d 670, 675 (1st Cir.1956), the First Circuit Court of Appeals stated that the terms of section 332's predecessor make it evident that "it is not an 'end result' provision, but rather one which prescribes specific conditions for the nonrecognition of realized gains or losses, conditions which, if not strictly met, make the section inapplicable." We will assume section 332 is not an end result provision and continue our analysis under the only remaining test.

The "interdependence" test asks whether the individual steps in a series had meaning only as part of the larger transaction or whether they had independent significance. The government argues that the merger and reorganization agreements were alone insignificant, but taken together accomplished plaintiffs' intended result. The government contends that execution of the merger agreement resulted in legal relations which neither party intended to exist more than momentarily. Execution of the reorganization agreement was only necessary in order to set the legal relations of the parties to the transaction in the posture which was intended from the outset; that

is, that Elder Food Mart, Inc. own the grocery store business formerly owned by Weston for which Elder Food Mart, Inc. paid $300,000, and that Super Market Developers own the remainder of Weston's assets.

Plaintiffs advance two reasons for the individual steps taken in this series of transactions. First, they contend that the outstanding shares in Weston were exchanged for cash and a promissory note from Elder in order to avoid a potential conflict of interest. Plaintiffs claim that the management of Associated Growers feared a conflict between four minority shareholders who collectively owned 0.03% of Weston stock and other grocery stores that competed against Weston yet purchased substantial amounts of Associated Growers products. Pursuant to this exchange, Weston was merged into Elder Food Mart, Inc. In addition to resolving plaintiffs' alleged minority shareholder problem, the Weston stock was disposed of in this manner to allow Super Market Developers to recognize for tax purposes its economic loss. While Super Market Developers's basis in the stock was $11,727,716, the stock was only sold for $9,049,703. Accordingly, SMD reported a long-term capital loss of $2,353,258 on the transaction in its 1980 consolidated federal income return.

In applying the "interdependence" test of the step transaction doctrine, we believe the legal effect of the language in the merger and reorganization agreements mandates that the two agreements be treated as steps in a single transaction. Given the integration clauses found in the agreements, they cannot, as a matter of law, be separated. Each step taken by the plaintiffs was so interdependent that the legal relations created by one transaction would have been meaningless without a completion of the entire series. The individual steps only had meaning as part of the larger transaction. Without execution of the reorganization agreement, the plaintiffs' intended result would not have been achieved.

Thus, we view the execution of the two integrated agreements as one transaction which did not effect a bonafide sale of stock and conclude, as a matter of law, that Super Market Developers, at all relevant times, owned more than 80 percent of the outstanding shares of Weston, and, in exchange for the cancellation of that stock, it received Weston's property. We conclude that the conditions specified in section 332(b) have been satisfied. The nonrecognition mandate of section 332(a) therefore applies to plaintiffs' series of transactions. Given this conclusion, there is no need for the court to analyze the facts under the sham transaction doctrine.

IT IS THEREFORE ORDERED that defendant's cross-motion for summary judgment is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is denied.