## MINNESOTA TEA CO. v. HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 106.   Argued December 16, 1937.—Decided January 17, 1938.

*Mr. James G. Nye* for petitioner.

*Mr. J. Louis Monarch,* with whom *Solicitor General Reed, Assistant Attorney General Morris, Messrs. Sewall Key* and *Maurice J. Mahoney* were on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Petitioner, in 1928, brought about the organization of the Peterson Investment Company, and transferred to it certain assets in exchange for the entire capital stock of that company. The stock was immediately distributed to petitioner's stockholders. Soon thereafter, petitioner transferred its remaining assets to Grand Union Company in exchange for 18,000 shares of that company's stock and $426,842.52 in cash. The cash was immediately transferred to and divided among petitioner's stockholders, in proportion to their stock holdings, in pursuance of a plan of reorganization. The Board of Tax Appeals, upon its first consideration of the case, held that no reorganization had been effected under § 112 (i) (1) (B) of the Revenue Act of 1928. 28 B. T. A. 591. The Circuit Court of Appeals concluded otherwise, reversed the Board, and remanded the case to the Board for further consideration. 76 F. (2d) 797. Upon review, pursuant to a writ of certiorari, we affirmed the judgment of the

Circuit Court of Appeals. *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378.

Upon the remand, the Board, after consideration, refused to follow the ruling of the commissioner that $106,471.73 of the $426,842.52 constituted taxable assets in the hands of petitioner. 34 B. T. A. 145. The court below, reversing the action of the Board, sustained the view of the commissioner, 89 F. (2d) 711; and the case again comes here upon writ of certiorari.

The facts are not in dispute. In addition to those already stated, it appears that immediately before the receipt by petitioner of the $426,842.52, its stockholders, at a special meeting, adopted the following resolution:

"Resolved further that all moneys received by Minnesota Tea Company on such sale of its assets and in consideration thereof, whenever received, shall be immediately distributed to the stockholders of Minnesota Tea Company ratably and in the proportion of their respective stockholdings in Minnesota Tea Company upon the assumption by the stockholders of all the corporate debts of Minnesota Tea Company in order to enable the company to hold all the corporate stock or securities received by it for its assets on such sale thereof without being compelled to sell any part of the same, and the Board of Directors are hereby authorized and directed to so distribute the said moneys as aforesaid and in behalf of the company enter into a written agreement with the stockholders, signed and executed by the company and all the stockholders whereby said stockholders, in consideration of such distribution and for the purpose of enabling the company to continue to hold the said corporate stock and securities without being compelled to sell any part thereof for the payment of existing debts, agree to pay all the corporate debts of the Minnesota Tea Company whether due and payable or not and whether certain or contingent."

When the cash was "distributed," petitioner's debts amounted to $106,471.73, about $6,500 of which was owing to the stockholders themselves. In pursuance of the resolution, the stockholders paid all the debts, retaining sums, aggregating about $6,500, necessary to discharge the amount of petitioner's indebtedness to them.

The question for determination is whether the delivery of the $106,471.73 by petitioner to the stockholders, an equal sum thereafter being applied by them to the payment of petitioner's debts in pursuance of the resolution, constituted a distribution within the meaning of the provisions of § 112 (d) (1) and (2) of the Revenue Act of 1928, copied in the margin.[1]

These provisions plainly establish that, in respect of any cash received and not "distributed," there was a taxable gain to petitioner. And, quite as plainly, payment of the debts by petitioner, if made directly by petitioner to the creditors, would not have been a distribution under the statute; for that contemplates a distribution to stockholders, and not payment to creditors. If, then, petitioner had followed the simple course of retaining in its own hands the sum here in question, and subsequently paying it directly to the creditors, it necessarily would

---

[1] "(d) *Same—gain of corporation.*—If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

"(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

"(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed."

result that liability of petitioner for a tax on the amount of gain could not be avoided. And, obviously, this is the effect of what was done, although circuitously.

The money was received by petitioner and was available for the payment of its debts. It was put into the hands of the stockholders upon the express understanding, as shown by the resolution heretofore quoted, that they would assume all the corporate debts of petitioner, and would enter into a written agreement with petitioner "whereby said stockholders, in consideration of such distribution and for the purpose of enabling the company to continue to hold" the corporate stock and securities which it had received in the reorganization "without being compelled to sell any part thereof for the payment of existing debts, agree to pay all the corporate debts of the Minnesota Tea Company . . ."

In pursuance of the resolution, the stockholders received the money from petitioner to the extent of $106,-471.73, not as a distribution for their benefit but as a fund the equivalent of which they were bound to pass on, and did pass on, to the creditors. The conclusion is inescapable, as the court below very clearly pointed out, that by this roundabout process petitioner received the same benefit "as though it had retained that amount from distribution and applied it to the payment of such indebtedness." Payment of indebtedness, and not distribution of dividends, was, from the beginning, the aim of the understanding with the stockholders and was the end accomplished by carrying that understanding into effect. A given result at the end of a straight path is not made a different result because reached by following a devious path. The preliminary distribution to the stockholders was a meaningless and unnecessary incident in the transmission of the fund to the creditors, all along intended to come to their hands, so transparently artificial that further discussion would be a needless waste of time. The

relation of the stockholders to the matter was that of a mere conduit. The controlling principle will be found in *Gregory* v. *Helvering*, 293 U. S. 465, 469–470; and applying that principle here, the judgment of the court below is

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.