NORDBERG MFG. CO. v. KUHL et al.

Civ. A. No. 3495.

District Court, E. D. Wisconsin.

Dec. 20, 1946.

Miller, Mack & Fairchild and Theodore C. Bolliger, all of Milwaukee, Wis. for plaintiff.

Timothy Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis. and Fred J. Neuland, Sp. Asst. to Atty. Gen. for defendants.

DUFFY, District Judge.

Plaintiff seeks to recover $28,951.39, plus statutory interest, representing surtax on undistributed profits alleged to have been erroneously and illegally exacted for the taxable year 1937. A timely claim for recovery was filed by plaintiff and rejected by the Commissioner of Internal Revenue. The facts are not in dispute.

The question to be here determined is whether distributions made by the plaintiff to its preferred stockholders in 1937, totaling $109,890, are properly allowable as dividends for the purpose of computing plaintiff's liability for the surtax on undistributed profits for that year. While plaintiff claims that said distributions were in law and fact dividends for which dividend paid credit is allowable, defendants contend that they should be considered as payments in partial liquidation of the preferred stock of plaintiff and were not in fact dividends.

Between June 18, 1937, and December 31, 1937, plaintiff paid to its preferred stockholders the sum of $109,890, which was declared by plaintiff's directors to be cumulative dividends unpaid in the years 1932 and 1933. The plaintiff treated such payments on its books as ordinary dividends and charged them to earned surplus. The question is: Was the character of these payments as apparent dividends altered by the prior agreement dated February 3, 1937, between plaintiff and all of its preferred stockholders?

This agreement, after reciting that $1,160,000 par value in preferred stock was outstanding, provided that the preferred stockholders deposit in escrow with the First Wisconsin Trust Company of Milwaukee, as depositary, all of their preferred stock endorsed by them for transfer. It provided further that all dividends declared by Nordberg upon the deposited stock be paid to the depositary and distributed by it as provided in Paragraph 5 of the agreement. In addition to the dividends Nordberg agreed to pay to the depositary for distribution an additional sum for each contract year, which when added to the dividends paid to the depositary in such year would make the distributions in dividends plus other payments not less than $125,000 for each contract year. It provided further that when the depositary had received dividends which, when added to the payments by Nordberg in compliance with the minimum yearly requirement of $125,000, aggregated the sum of $1,000,000, "the stockholders shall cease to have any right to further dividends upon the deposited stock and the depositary shall deliver up and surrender all of the Nordberg preferred stock held by the depositary hereunder to Nordberg and full title thereto shall thereby be vested in Nordberg, or its nominee, and Nordberg shall be deemed to have fully performed and complied with this agreement." Paragraph 6 provided that if Nordberg failed to make the minimum quarterly payments and such default continued for a period of 60 days after notice thereof in writing by the depositary to Nordberg, the depositary upon the request of 35% or more of the par amount of the preferred stock held by the depositary shall thereafter hold the deposited stock for and make delivery thereof to the depositors and that the agreement will then be terminated. Nordberg agreed to exercise every reasonable effort to conduct its business in such manner as would enable it to make payment of dividends upon the preferred stock deposited and to comply with the requirements for minimum yearly payments. The agreement then provided in Paragraph 9 that it "shall not create any obligation on the part of Nordberg to make payments in the minimum amounts provided, * * * it being the purpose and intention hereof that the rights of the depositors under this agreement shall be limited to return of the Nordberg preferred stock by the depositary in case of default by Nordberg * * * and in case of return of said stock to the depositors for default, as aforesaid, any and all payments or distributions by Nordberg to the depositors hereunder shall be applied to the extent necessary to satisfy any accrued dividends

upon the stock deposited hereunder, and any surplus shall be applied as a liquidating dividend upon such stock." Paragraph 10 provided: "The depositors hereby waive, for the period that Nordberg shall make the payments herein provided, all of the provisions and requirements of the preferred stock described in Article III of the Articles of Incorporation of Nordberg except the provision for the accumulation of dividends at the rate provided for such stock."

After 1937 Nordberg made subsequent payments and again treated them as dividends. On December 26, 1940, however, taking advantage of a provision in the contract to anticipate payments required by it over an eight year period, Nordberg deposited with the trust company $347,192.10 and the president of the company in the accompanying letter stated: "The payment made herewith is deemed by the company to be in acquisition of said preferred stock by purchase, and not a dividend or a distribution of income or of earnings or profits; accordingly, no Wisconsin Privilege Dividend Tax is applicable thereto and said payment is made without deduction therefor."

During the years here involved plaintiff had been engaged principally in the manufacture of heavy machinery such as large Diesel engines, rock crushers, etc. During the years 1931 to 1935 plaintiff had sustained large losses in the operation of its business and had been unable to pay cumulative dividends on its preferred stock after January of 1932. By the beginning of 1937, accrued unpaid dividends totaled $372,457.50.

Section 14(b) of the Revenue Act of 1936 imposed on corporate net income a surtax on undistributed net income. Section 14(a) (2) defined "undistributed net income" as adjusted net income minus the sum of the dividends paid credit. Section 27(a) defined "dividends paid credit" as the amount of dividends paid during the taxable year. 49 Stat. 1648, 1656, 1665, 26 U.S.C.A. Int. Rev.Acts, pages 823, 837.

Section 115(c) of the Act, 26 U.S.C.A. Int.Rev.Acts, page 868, provides: "Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. For the purpose of the preceding sentence, 'complete liquidation' includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan. * * *"

The Commissioner of Internal Revenue determined that all payments made by plaintiff during the year 1937 to the depositary constituted distributions in partial liquidation of all of plaintiff's outstanding preferred stock, and that no part of the amount so paid was properly chargeable to its earnings or profits accumulated after February 28, 1913, within the meaning of Sections 27(a) and 27(f) of the Revenue Act of 1936.

Since Section 27 grants a special credit in the nature of a deduction, the taxpayer must sustain the burden of showing compliance with its exact terms. Helvering v. Ohio Leather Co., 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. 113. In applying the provisions of the 16th Amendment and the income tax laws enacted thereunder, the courts must regard matters of substance and not mere form. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Minnesota Tea Co. v. Helvering, 302 U.S. 609, 58 S.Ct. 393, 82 L.Ed. 474.

I conclude that in spite of the designation of the payments made in 1937 as dividends, the agreement of February 3, 1937, discloses an intent on the part of the plaintiff to liquidate its outstanding pre-

ferred stock pursuant to a bona fide plan. Plaintiff lays much stress on the fact that the contract did not require plaintiff under all the circumstances to make the yearly minimum payments. This provision was inserted in the contract as a leeway to safeguard plaintiff's interests; but it did not serve to destroy in any way the plan to liquidate all of the outstanding preferred stock at a total amount considerably less than the sums due as accrued dividends plus the par value of the stock.

When the entire transaction is considered, the conclusion is inescapable that the payments in 1937 were in partial liquidation of the preferred stock. It follows that a dividend paid credit was not properly allowable, and judgment must therefore go for the defendants.