Hoover, Inc. v. Commissioner.
Hoover, Inc. v. Commissioner
Docket No. 6156-69.
United States Tax Court
T.C. Memo 1972-54; 1972 Tax Ct. Memo LEXIS 200; 31 T.C.M. (CCH) 221; T.C.M. (RIA) 72054; February 28, 1972, Filed *200 E. H. Hoover, Jr. owned all the stock of petitioner, a supplier of stone for road builders, and of Hot Mix, Inc., a corporation engaged in road construction. Burns, Inc., a subsidiary of Hot Mix, was indebted to a bank for $594,000 and was insolvent. The bank was insured by F & C. Hoover, petitioner and others guaranteed F & C against loss and Hoover deposited collateral with F & C. In December 1966 demand was made on Hoover, individually, that he make good on his guaranty. 222 He authorized F & C to liquidate the deposited collateral. F & C did so and made the proceeds available to Hoover, who delivered his check for $594,000 to petitioner in exchange for its note. Petitioner delivered its check to Burns, Inc., and received its note. Burns, Inc. paid the debt. Petitioner was a mere conduit through which Hoover met his obligation as guarantor of the debt of Burns, Inc., and these transactions gave rise to no true debtor-creditor relationship between petitioner and Burns, Inc.
Held: Petitioner is not entitled to a deduction by reason of these transactions either as a bad debt, a business loss, or an ordinary and necessary business expense, and is not entitled to loss carrybacks *201 to prior years, nor an interest deduction for 1967. James Clarence Evans and Charles Carter Baker, Jr., 18th Floor, Third Nat'l Bank Bldg., Nashville, Tenn., for the petitioner. Jack D. Yarbrough, for the respondent. BBUCE Memorandum Findings of Fact and Opinion BBUCE, Judge: Respondent determined deficiencies in income tax of the petitioner and additions to tax under section 6653(a) of the Internal Revenue Code *202 of 1954 for the years and in the amounts as follows: Taxable
Addition to Tax
Year
Deficiency
Sec. 6653(a)
1963
$20,938.94
1964
57,076.32
$ 2,853.82
1965
80,653.98
4,032.70
1966
32,360.33
1,618.02
1967
11,241.48
At the trial of this case respondent conceded that petitioner was not liable for the additions to tax under section 6653(a). Respondent also concedes that petitioner is entitled to a deduction of $2,644.39 for the taxable year 1967 for depreciation on the buildings and equipment transferred from John L. Burns, Inc. to petitioner. The principal issue before the Court is whether petitioner is entitled for the taxable year 1966 to a deduction of $557,746.07 for an advance made to John L. Burns, Inc., either as a bad debt, a business expense, or an ordinary business loss. The remaining issues are: (a) whether petitioner is entitled for the taxable year 1967 to a deduction of $33,304.12 for accrued interest allegedly owed to E. H. Hoover, Jr.; (b) whether petitioner is entitled to net operating loss deductions for the taxable years 1963, 1964, and 1965, resulting from carrybacks of a claimed net operating loss for the taxable year 1966. These *203 last two issues will be determined by the outcome of the principal issue involved. Findings of Fact Petitioner is a Tennessee corporation which, at the time of the filing of the petition herein, had its principal office at Donelson, Davidson County, Tennessee. As its primary business, at least since 1960, petitioner has been engaged in quarrying and selling limestone and related products for use in highway and other construction. Petitioner maintains its records and files its Federal income tax returns on the accrual method of accounting. It filed its Federal income tax returns, Forms 1120, for the calendar years 1962 through 1967 with the district director of internal revenue at Nashville, Tennessee, or the director of the Southeast Service Center, Chamblee, Georgia. All of the capital stock of petitioner has, since May 1960, been owned by E. H. Hoover, Jr. (sometimes hereinafter referred to as Hoover). He was president of the corporation for the years 1962 through 1967. Hot Mix, Inc. is a Tennessee corporation which has been engaged in the business of supplying paving materials and services used for road and highway construction since 1960. It engaged in business as a general *204 contractor and held general contractors' licenses. In December, 1964, Hoover owned 35 percent of the outstanding stock of Hot Mix, Inc.; on July 31, 1965, he owned 50 percent of such stock; and in July, 1966, he acquired the remaining capital stock. In July, 1964, Hot Mix, Inc., acquired as wholly-owned subsidiaries, the following listed Tennessee corporations: John L. Burns, Inc.
Supplies, Inc. Burns Equipment Company, Inc.
Concrete, Inc. John L. Burns, Inc. (Burns, Inc.) is a Tennessee corporation which has been engaged in business as a general contractor, primarily in road grading and general highway construction, and held general 223 contractors' licenses issued by the State of Tennessee. The principal business of Burns Equipment Company, Inc. (Equipment), was to rent equipment to Burns, Inc., which the latter operated and used in its business. Burns, Inc., however, owned and operated a substantial amount of equipment. The principal business of Concrete, Inc. was principal business of Concrete, Inc. was concrete construction. This corporation constructed concrete bridges, did concrete work and poured concrete paving. The principal business of Supplies, Inc. was *205 to sell incidental supplies to the contracting industry. The petitioner's taxable income (loss), Federal income tax liability and accumulated earned surplus for its taxable years 1962 through 1966 are shown below: Taxable
Accumulated
Income
Income Tax
Earned
Years
(loss)
Liability
Surplus
1962
* $ 45,433
$ 10,259
$ 110,350
1963
77,817
20,949
223,936
1964
143,921
53,376
432,553
1965
484,599
202,993
868,758
1966
** (386,645)
** None
** 719,171
The taxable income (loss), Federal income tax liability, and accumulated earned surplus of Equipment, for the years indicated, are shown in the following tabulation (cents omitted): Accumu-
Income
lated
Fiscal
Taxable
Tax
Earned
Year
Income
Liability
Surplus
2-28-62
$ (3,965)
None
$ 77,279
2-28-63
(5,074)
None
79,579
2-29-64
(55,650)
None
24,496
11-30-64
104,110
$46,805
118,485
The taxable income (loss), Federal income tax liability, and *206 accumulated earned surplus (deficit), of Burns, Inc., for the years indicated are shown in the following tabulation (cents omitted): Accumu-
Income
lated
Fiscal
Taxable
Tax
Earned
Year
Income
Liability
Surplus
1-31-63
* $ 38,531
$13,631
$ 76,464
1-31-64
(43,834)
None
(79,491)
11-30-64
(222,879)
None
31,859
The taxable income (loss), Federal income tax liability and accumulated earned surplus (deficit) of Concrete, Inc., for the years indicated are shown in the following schedule (cents omitted): Accumu-
Income
lated
Fiscal
Taxable
Tax
Earned
Year
Income
Li ability
Surplus
8-31-61
None
None
None
8-31-62
[10,848)
None
[10,848)
8-31-63
None
None
(10,848)
11-30-64
(47,853)
None
(158,702)
The taxable income, Federal income tax liability and accumulated earned surplus of Hot Mix, Inc. for the indicated years are shown in the following tabulation (cents omitted): Accumu-
Income
lated
Fiscal
Taxable
Tax
Earned
Year
Income
Liability
Surplus
7-31-61
$ 18,241
$ 5,472
$ 12,768
7-31-62
24,550
7,365
29,954
7-31-63
30,640
9,283
50,021
7-31-64
38,690
10,950
74,382
*207 Hot Mix, Inc. and its subsidiaries, Burns, Inc., Concrete, Inc., Supplies, Inc., and Equipment, filed consolidated Federal income tax returns for the fiscal years ended July 31, 1965, 1966, and 1967. These returns reflected consolidated losses in the amounts of $4,600.12, $286,726.80, and $26,418.83, for the fiscal years 1965, 1966 and 1967, respectively, and, no income tax liability for any of these years. The taxable income or (loss) for each of these corporations as shown in these returns is as follows: Taxable
Income
(loss)
(cents
omitted)
Fiscal Year
Hot Mix, Inc.
Burns, Inc.
Concrete, Inc.
Supplies, Inc.
Equipment
1965
$560,953
($425,436)
($141,776)
None *
$ 1,659
1966
30,686
(282,562)
(33,300)
None *
1,550
1967
75,427
(99,056)
* None
($2,790)
* None The earned surplus (deficit) of Hot Mix, Inc. and its subsidiaries as reflected in the Federal consolidated income tax returns for the fiscal years ended July 31, 1965, 1966 and 1967, is as follows (cents omitted): Fiscal Year
Hot Mix, Inc.
Burns, Inc.
Concrete, Inc.
Supplies, Inc.
Equipment
1965
$639.830
($395,398)
($300,479)
($ 97,772)
$ 120,145
1966
642,044
(676,186)
(333,779)
(97,513)
118,594
1967
701,555
(775,242)
(296,442)
(100,303)
125,303
*208 224 The petitioner, Hot Mix, Inc. and Burns, Inc. have from time to time participated in highway construction contracts involving on one project the services and products of two or three of these businesses. The interrelation of these corporations has enabled them to offer general contracting services, subcontracting services, and the supplying of material, and to bid on and participate in highway contracts more advantageously than any of them could do alone. The petitioner acted only as a supplier and not as contractor or subcontractor on highway projects. In this capacity it was not subject to governmental restrictions and the wage scales imposed under Federal law. Petitioner, by having available a paving contractor, Hot Mix, with which jointly to negotiate "package" proposals, has had an advantage in securing stone and aggregate sales to independent general and subcontractors on interstate highway projects in Tennessee, Georgia, Alabama and Kentucky, and on various other roadway construction jobs. Petitioner would require that its stone must be used if Hot Mix were permitted to participate. When a job was bid and a contract obtained by the prime or subcontractor member of *209 the team, petitioner would bring in its equipment for opening a limestone quarry and crushing the product for sale to Burns, Inc. or Hot Mix. As a result of having a quarry established in a particular construction area, the team could bid competitively on subsequent contracts in the area and petitioner, as supplier, and Hot Mix, acting as a paving subcontractor, could sell their product and services even if the team was not successful in bidding as the prime contractor. On January 5, 1961, a contract was executed between Burns, Inc. and the State of Georgia whereby Burns, Inc., as a general contractor, agreed to furnish labor and material to do certain work on Interstate Highway Project No. I-75-3, Contract 1, in Whitfield County and Catoosa County, Georgia. When this contract was bid Hoover and his associates planned that petitioner would sell the crushed stone and aggregate to be used on the project to Burns, Inc., and Hot Mix was to perform the paving on a subcontract from Burns, Inc. Although Mix and petitioner worked together in submitting the bid through Burns, Inc., and petitioner opened a quarry for the job, petitioner subsequently contracted the stone supply to a local material *210 supplier that had already established an operating quarry. After work was begun on the Georgia project, Burns, Inc. had difficulty in meeting its contract commitments and subsequently suffered financial losses on the project. For the taxable year beginning February 1, 1962, Burns, Inc. had retained earnings of $178,884 that declined to $76,464 in that year and declined further in 1963 to a deficit of $79,491 as of January 31, 1964. Nine months later Burns, Inc's earned surplus as of November 30, 1964 was $31,859. The Fidelity & Casualty Company of New York (Fidelity), as surety, furnished bid and performance bonds necessary for Burns, Inc., Hot Mix and petitioner to bid and perform highway construction jobs. After Burns, Inc. began having financial difficulty, Fidelity gave its guarantee to the Commerce Union Bank of Nashville (Bank), in order to obtain for Burns, Inc. and Hot Mix a $600,000 line of credit. Pursuant to the terms of the guarantee Burns, Inc. and Hot Mix were required to deposit the funds from the bank loans in a joint-control account with disbursals permitted only on joint signatures, including an agent of Fidelity. On October 2, 1963, the Bank, as a requisite to *211 granting the line of credit up to $600,000 for Burns, Inc. and Hot Mix, required Burns, Inc., Hot Mix, Equipment, Supplies, Concrete, John L. Burns and E. H. Hoover, Jr. to execute a guaranty pursuant to which they guaranteed payment to the Bank of the loans made under the line of credit. As security for the guaranty, all of the capital stock of the above corporations and of petitioner was to be deposited with the Bank as collateral; Burns, Inc., Equipment, and Supplies were to execute a chattel mortgage agreement on all their machinery and equipment in favor of the Bank and Burns, Inc. and Hot Mix were to execute assignments upon their accounts receivable, including any retainages thereon, and pay the proceeds when received to the general control account of Hot Mix and Burns, Inc., which was to be supervised by Fidelity. The guarantee provided in paragraph 7 thereof, as follows: It is expected that The Fidelity and Casualty Company of New York will obtain an intrument of Guaranty from John L. Burns, Inc., Hot Mix, Inc., John L. Burns and Eph Hoover, Jr. to guarantee the repayment of any loans made within the aforementioned Six Hundred Thousand Dollars ($600,000.00) line of credit. *212 Further other types of collateral 225 security will be obtained in the form of chattel mortgage on road construction and miscellaneous equipment and capital stock in various corporations. All will be obtained in the name of the Commerce Union Bank or in blank and delivered to said Bank. It is understood that said security and/or guaranty will be assigned to The Fidelity and Casualty Company of New York in the event payment is made by The Fidelity and Casualty Company of New York under this guaranty. On December 12, 1963, Burns, Inc. and Hot Mix, as principals, and petitioner, as indemnitor, entered into a "General Contract of Indemnity" under which they agreed to indemnify Fidelity against any loss resulting from liability on any surety bond which Fidelity might sustain as surety on behalf of either of the principals. In June 1964, Hot Mix and Burns, Inc. were submitting to the State of Tennessee, Highway Department, three bids as prime contract bidders, in the total amount of approximately $2,500,000, and on June 26, 1964, an agreement was entered into between Fidelity and Hot Mix and Burns, Inc., under which Fidelity, as surety, would issue bid bonds for Hot Mix and Burns, *213 Inc. as principals, and performance bonds in the event of the award or awards of any contract or contracts. Fidelity also agreed to obtain for Hot Mix and Burns, Inc. a line of credit totaling $200,000. The terms of the earlier agreement under which the previous $600,000 line of credit had been obtained at the Bank were incorporated by reference in the agreement. This agreement was also executed by Equipment, Supplies, Inc., Concrete, Inc., and John L. Burns and E. H. Hoover, Jr., as individuals At some time prior to June 1964, Hoover had sold certain stock in a corporation known as Hoover Motor Express, Inc. to Ryder Systems, Inc. The purchaser had deposited in escrow with The First American National Bank of Nashville the sum of one million dollars, and a further sum was to be paid in the future at the closing of the sale. In the agreement with Fidelity under date of June 26, 1964, Hoover also pledged and assigned the deposited funds, and other amounts due from Ryder, to the extent of $800,000 in all, as additional security to Fidelity. Burns, Inc. had ceased to perform any construction work shortly before March 8, 1965. It had completed most of its work on the Whitfield-Catoosa *214 contract in Georgia. On March 8, 1965, all of the operating equipment owned by Burns, Inc. was sold at public auction in Nashville, Tennessee, for $634,695. From these proceeds the auctioneers received $34,678.62 for commission; a finance company received $33,908.47; a machine company received $436,665.18; and Burns, Inc. received the balance of $129,442.73. It was generally known in the road construction industry that Burns, Inc. was inactive and out of business at the time of the auction sale. The sale was widely advertised. Burns, Inc. used the proceeds it received from the auction sale to pay for supplies and other bills. The income and expenses of Burns, Inc. after March 8, 1965, related to work performed by subcontractors on the Whitfield-Catoosa contract and a Giles County, Tennessee job. On April 13, 1966, a "General Contract of Indemnity" was entered into by Burns, Inc., as principal, and Hot Mix, Equipment, Concrete, Inc. and petitioner, as indemnitors, and the Continental Insurance Company (an affiliated company of Fidelity) providing that the indemnitors would indemnify Continental in the event of any claims or other losses which that company might sustain as surety *215 on behalf of the principal. On the same date another "General Contract of Indemnity" was entered into by Hot Mix, as principal, and Burns, Inc., Equipment, Concrete, and petitioner, as indemnitors, and Continental, in the same form and language. Burns, Inc. borrowed a total of $700,000 from the Commerce Union Bank under the lines of credit extended to it and Hot Mix. These loans were evidenced by five promissory notes, payable on demand, signed between October 3, 1963, and July 8, 1964. The amount owed to the Bank by Burns, Inc. on these notes on December 1, 1966, was $594,000. In November of 1966 a representative of Fidelity discussed with Hoover the problem of securing payment of the debt of Burns, Inc. to the Bank. On December 1, Fidelity wrote Hoover, personally, as follows: As you know, The Fidelity and Casualty Company of New York arranged for certain Lines of Credit on behalf of Hot Mix, Inc. and John L. Burns, Inc. with Commerce Union Bank of Nashville, Tennessee (hereafter Commerce Union)in the respective amounts of $600,000 and $200,000. As an inducement to Commerce Union to extend these 226 Lines of Credit The Fidelity and Casualty Company of New York guaranteed *216 repayment of any loans to Hot Mix, Inc. and John L. Burns, Inc. thereunder. As of this time and under said Lines of Credit Hot Mix, Inc. and John L. Burns, Inc. are obligated to Commerce Union in the amount of $594,000. Contemporaneously with the establishment of these Lines of Credit you joined with Hot Mix, Inc., John L. Burns, Inc. and others to guarantee repayment of the aforementioned loan. Demand is made upon you to meet your obligation under this guarantee. You are requested to make immediate arrangements for the repayment of Commerce Union in the amount of $594,000, to the end that The Fidelity and Casualty Company of New York will not be required to respond under its guarantee, and, further, that the Fidelity and Casualty Company of New York will be released forthwith from any and all obligations it may presently or hereafter have to Commerce Union under said guarantee. In a letter to Fidelity dated December 5, 1966, Hoover replied: I refer to your demand letter of December 1st relative to the obligation of Hot Mix, Inc. and John L. Burns, Inc. to Commerce Union Bank of Nashville, Tennessee in the amount of $594,000., said obligation being subject to my guarantee. *217 I have heretofore caused certain collateral to be deposited with you to secure you against exposure in connection with the above. I hereby request that you apply such collateral to the satisfaction of the above obligation. In complying with this request you may take such steps as you deem advisable in your judgment to protect the interests of The Fidelity and Casualty Company of New York. Since said collateral is in the form of both cash and United States Government Securities you are authorized to liquidate such securities at your convenience in order to effectuate the above. Pursuant to Hoover's instructions of December 5, 1966, Fidelity liquidated Hoover's collateral. At some time thereafter and on or before December 29, 1966, Fidelity made the proceeds available to Hoover. On December 29, 1966, the following transactions were carried out: (1) Hoover, individually and as an officer of petitioner, and C. R. Mackay, as an officer of Burns, Inc., Hot Mix, Equipment, Supplies, and Concrete, signed a document entitled "Supplemental Conditions and Provisions," which stated, in part: WHEREAS, The Fidelity and Casualty Company of New York (hereafter F & C) has demanded of *218 Eph Hoover, Jr. (hereafter Hoover) to satisfy a loan at Commerce Union Bank guaranteed by F & C and Hoover wishes to satisfy said loan, and WHEREAS, Hoover as assignor, did under date of June 29, 1964, irrevocably transfer, set over and assign to F & C his interest, up to Eight Hundred Thousand ($800,000) Dollars, in the proceeds of the sale of certain stock of Hoover Motor Truck Lines, Inc. to Ryder Systems, Inc. such having then been paid to First American National Bank (of Nashville, Tennessee), as escrow agent, or still to be paid by Ryder Systems, Inc. (all as more fully outlined in a copy of said assignment attached hereto), and WHEREAS, under date of June 29, 1964, said Hoover and F & C did enter into a certain contract entitled CONDITIONS AND PROVISIONS providing, among other things, that F & C was to retain the funds received under the aforementioned assignment until designated obligations of John L. Burns, Inc. and/or Hot Mix, Inc. under certain contracts and surety bonds and certain obligations to Commerce Union Bank, Nashville, Tennessee, such having been guaranteed by F & C, were fully performed and satisfied, and WHEREAS, First American National Bank did on April 2, 1965, as *219 provided in said assignment, pay to F & C the sum of Five Hundred Ninety Thousand ($590,000) Dollars which F & C presently retains as provided in said CONDITIONS AND PROVISIONS, plus interest less certain payments to Hoover, and WHEREAS, Hoover wishes to see the obligation to Commerce Union Bank satisfied from the funds received and retained by F & C and has by letter requested that F & C arrange for said payment from said funds. NOW, THEREFORE, in consideration of F & C acting on said request of Hoover, it being understood that F & C may act in a manner that will best protect its interests, Hoover agrees as follows: 1. That the assignment heretofore mentioned, and which has been filed with and acknowledged by Ryder Systems, Inc. and First American National Bank will remain in full force and effect. 2. That F & C may retain such sums as it may hereafter receive under said 227 assignment, up to Two Hundred Thousand ($200,000) Dollars, pending the full completion by John L. Burns, Inc. and/or Hot Mix, Inc. of all contracts bonded by F & C and their acceptance and until all bills accruing thereon to materialmen, laborers and subcontractors are paid and the obligations of F *220 & C under said bonds are extinguished. 3. That in the event F & C is required to respond under the terms of any bond issued for John L. Burns, Inc. and/or Hot Mix, Inc. or should F & C incur any loss or expense in connection therewith, F & C shall be entitled to be made whole and to retain and apply against such loss and expense all or any part of said funds. * * * (2) Hoover gave his personal check to petitioner in the amount of $594,000; (3) Petitioner advanced $594,000 to Burns, Inc. by certified check. Burns, Inc. deposited this check in its account at the Commerce Union Bank on the same date; (4) Burns, Inc. issued its check to the Bank for $594,000 in payment of the five outstanding notes owed to the Bank. Each of these notes bears the stamp of the "note teller" of the Bank, reflecting they were paid on December 29, 1966; (5) E. H. Hoover, Jr. received a demand promissory note from petitioner dated December 29, 1966, payable to him in the amount of $594,000, with interest at 5 percent per annum; (6) Petitioner received a demand promissory note from Burns, Inc. dated December 29, 1966, in the amount of $594,000 with interest at 5 percent per annum. When petitioner *221 made the advance to Burns, Inc., the latter had contingent claims against the State of Georgia and a subcontractor arising from the I-75 Highway Project in Whitfield and Catoosa counties, Georgia. Burns, Inc. collected nothing on either of the claims prior to December 1970. As of December 31, 1966, the petitioner's records reflect that it charged off as a bad debt the sum of $557,746.07 representing the balance due on the advance of $594,000 after crediting Burns, Inc. with the transfer of land, buildings, and furniture at book value to petitioner. At the end of the year 1966, Hoover believed that Burns, Inc. would never be able to pay petitioner the funds it had advanced on December 29, 1966. There were no changes in the circumstances of Burns, Inc. between December 29, 1966 and December 31, 1966. Petitioner accrued and deducted as interest payable to E. H. Hoover, Jr. for the taxable year 1967 the amount of $33,304.12 with respect to his advance of $594,000. Petitioner made further payments to Hoover of $29,640 as interest on his advance on December 31, 1968, and $29,640 on December 30, 1969. Petitioner also paid Hoover $100,000 on August 11, 1967, which was treated on its books *222 as a repayment of principal on his $594,000 advance. In the statutory notice of deficiency for the taxable year 1966, respondent disallowed a deduction claimed for bad debts to the extent of $557,746.07, stating: because it is determined that this amount, $557,746.07, resulting from the transfer of funds to John L. Burns, Inc., a controlled corporation, is not allowable under section 166 of the Internal Revenue Code as it has not been established that a debtor-creditor relationship existed or was intended by the transfer, * * * The substance of the transactions outlined herein was that E. H. Hoover, Jr. paid the debt that Burns, Inc. owed the Bank. Petitioner was merely a conduit and no bona fide debtor-creditor relationship was created between petitioner and Burns, Inc., or between petitioner and Hoover, by means of the transfers of funds from Hoover to petitioner and from petitioner to Burns, Inc.
The accrual and payment of $33,304.12 by petitioner to Hoover was not a payment of interest deductible by petitioner as an ordinary and necessary expense for the taxable year 1967. Petitioner is not entitled to deductions for net operating losses for the *223 taxable years 1963, 1964 and 1965, resulting from carry-backs of a net operating loss for 1966. Opinion The petitioner claimed a deduction as a bad debt on its corporation income tax return for 1966 for the amount of $557,746.07 as representing a transfer to John L. Burns, Inc. of $594,000 less an amount for land, buildings and furniture transferred to it from Burns, Inc. Petitioner contends that the amount is properly deductible either as a bad debt under section 166, a loss under section 165, or an ordinary and necessary business expense under section 162(a), Internal Revenue Code of 1954. [1] Respondent 228 denied the deduction as claimed and contends that the amount is not allowable as a deduction under any provision of law. *224 Petitioner was wholly owned by E. H. Petitioner was wholly owned by E. H. Hoover, Jr. In December 1966 the Fidelity and Casualty Company of New York demanded of Hoover personally that he meet his obligation under his guarantee for repayment of a loan made by Commerce Union Bank of Nashville to John L. Burns, Inc., and insured by Fidelity, in the amount of $594,000. The method adopted by Hoover to comply with this demand gave rise to the present controversy. Hoover had previously addigned to Fidelity Hoover had previously assigned to Fidelity as collateral security certain funds on deposit in another bank, some of which were invested in Government securities. At Hoover's request, Fidelity liquidated this collateral and made the proceeds available to him. Hoover then gave his personal check for $594,000 to petitioner and took petitioner's note for this amount. Petitioner delivered its check in this amount to Burns, Inc., and received that corporation's note. Burns, Inc., which was otherwise insolvent, paid its obligation to the bank from this source. E. H. Hoover, Jr. was personally a guarantor of the liability of Burns, Inc. Also, petitioner and Hot Mix, both wholly owned *225 by Hoover, were guarantors of this debt. Burns, Inc., was a subsidiary of Hot Mix. Petitioner had operated at a profit in the years 1962 through 1965 and had a profit from its operations in 1966 prior to this transaction. Hot Mix and its subsidiaries had filed consolidated returns for fiscal years ended July 31, in 1965 and 1966, reporting losses, principally due to losses incurred by Burns, Inc.
Petitioner's reply brief states in part "* * * it would hardly have made sense for any controlling stockholder in Mr. Hoover's situation to have let his personal $594,000 go to the insolvent John L. Burns, Inc., with no hope of recovery, rather than to insist that the business team in some way incur the business loss and that he loan his money to a solvent creditor. * * * He was faced with choice of losing his own $594,000 or letting Petitioner, which was the company directly making the profits from the stone sales through the team, and which was obligated just as he was, bear the loss." E. H. Hoover, Jr. provided the funds for payment of the debt of Burns, Inc. to the bank. He chose to transmit the funds through petitioner's accounts. It is the position of the petitioner that Hoover *226 may do this in order to let petitioner, rather than Hoover, personally, bear the loss on the worthless debt of Burns, Inc.
It is contended that petitioner had good and sufficient reasons for paying the debt of Burns, Inc. It was an indemnitor of Burns, Inc. under certain contracts with Burns, Inc. under certain contracts with Burns, Inc. under certain contracts with Fidelity and Continental. It was expecting to continue in business as a supplier to Hot Mix in future contracts of that corporation. Burns, Inc. had been associated with petitioner in earlier contracts and it was desirable to preserve the reputation of the "team"and its members for payment of debts when new bids were made or bonds were sought. Hence, petitioner paid to protect its credit rating and ability to secure bonds in the future. The demand made by Fidelity for payment of the debt of Burns, Inc. to the bank was made upon E. H. Hoover, Jr., personally, and not upon petitioner. Fidelity held a substantial amount of Hoover's personal funds under an absolute assignment. While Fidelity permitted Hoover to transfer these funds through petitioner's accounts in the process of paying the bank, petitioner was nothing more *227 than a conduit for this transfer to serve Hoover's private purpose and for his personal benefit. The only party to derive a benefit from the method in which the obligation of Burns, Inc. was paid was Hoover, personally. By transmitting the funds through the petitioner corporation as a conduit, an opportunity was provided for petitioner to claim a deduction from its taxable income for 1966 sufficient to create a net operating loss, with carrybacks to prior profitable years. Also, Hoover was afforded a source of repayment of the funds demanded of him by Fidelity under his personal guaranty. Petitioner, having operated at a profit, was the only corporation in the group which could get a material tax benefit from 229 claiming such a deduction, and might eventually be able to reimburse Hoover out of future earnings for the payment made on account of his guaranty. And if his corporation could be saddled with the realized loss, Hoover would not have to bear it personally. Petitioner was not called upon by the bank or by Fidelity to pay the debt, as indemnitor or otherwise. Transmission of the funds used for payment through petitioner was not a necessary step in accomplishing payment *228 to the bank. Hoover, as controlling stockholder, desired that petitioner bear the loss. Petitioner received the worthless note of the insolvent Burns, Inc. and gave Hoover petitioner's note which petitioner had sufficient assets to cover. This is a manipulation of a controlled corporation for the personal benefit of the controlling stockholder. It is inconceivable that had petitioner been free to choose, it would voluntarily have assumed this loss to its own detriment. It is well established that tax consequences must turn on the economic substance and not the form of the transaction in issue. Commissioner v. Court Holding Co., 324 U.S. 331 (1945); Gregory v. Helvering, 293 U.S. 465 (1935); Higgins v. Smith, 308 U.S. 473 (1940). As stated in Commissioner v. Court Holding Co., supra: The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must *229 be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. * * * Although the Court Holding Company case dealt with a sale, the principle expressed therein has been applied to Federal taxing statutes in general. Higgins v. Smith, supra; Gregory v. Helvering, supra. A given result at the end of a straight path is not made a different result because reached by following a devious path. Minnesota Tea Co. v. Helvering, 302 U.S. 609 (1938). Petitioner's argument that it advanced this money in order to protect its future business is without merit. Any conceivable benefit to the petitioner's business is speculative and peripheral and is insufficient to justify the voluntary assumption of a loss of the magnitude here involved. There is nothing in the record to indicate the loan had to be repaid by petitioner rather than by Hoover personally. The petitioner has not shown a sound business purpose in carrying out the transaction in the manner *230 actually employed. An operation having no business purpose other than to minimize taxes will not be recognized. Gregory v. Helvering, supra.It was there argued that the action taken was a reorganization pursuant to the statute, and the motive of the taxpayer thereby to escape payment of a tax will not alter the result or make unlawful what the statute allows. The court said the undertaking was "an elaborate and devious form of conveyance masquerading as a corporate reorganization" and affirmed the decision that there had been no "reorganization" within the statute. A transaction should not be given effect for tax purposes unless it serves a purpose other than tax avoidance. Having the petitioner in form pay the loss with funds supplied by Hoover was a mere formalism designed to alter the tax liabilities resulting from the settlement. Gregory v. Helvering, supra. In our opinion the transfer of Hoover's funds through petitioner's accounts in paying the debt of Burns, Inc. to the bank was a transaction without a legitimate business purpose; petitioner did not become indebted to Hoover thereby; did not acquire a worthless debt from Burns, Inc.; and did *231 not sustain the loss for which the deduction was claimed. We hold that the petitioner is not entitled to the deduction claimed. The amount was transferred through petitioner as a conduit and no real debtor-creditor relationship between petitioner and Burns, Inc. resulted. By paying, in form, an amount to an insolvent corporation with no reasonable expectation of repayment, petitioner did not acquire a debt from Burns, Inc., and may not deduct the amount under section 166 as a bad debt. Petitioner may not deduct the amount under section 165 as a loss since petitioner had no valid business purpose for the transaction. See International Trading Co., 57 T.C. - (Dec. 28, 1971). Richard R. Riss, Sr., 57 T.C. - (Dec. 30, 1971). 230 Petitioner may not deduct the amount under section 162(a) as an ordinary and necessary business expense in the absence of a business purpose of its own rather than of its controlling stockholder. Since petitioner did not sustain the loss, it is not entitled to the loss carrybacks claimed for 1963, 1964 and 1965. Also, since petitioner did not become indebted to Hoover personally it is not entitled to the deduction claimed for 1967 for interest paid him *232 on the alleged loan. Decision will be entered under Rule 50. Footnotes
*. After net operating loss deduction of $26,672.17. ↩
**. After deductions of "bad debt" of $557,746.07 which is in issue.↩
*. After net operating loss deduction of $6,607.↩
*. After net operating loss deductions.↩
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * * * * SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly Worthless Debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * *↩