560 A.2d 915

**LACKAWANNA–SUSQUEHANNA–WAYNE MENTAL
HEALTH AND MENTAL RETARDATION
PROGRAM, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF
PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1989.

Decided June 21, 1989.

Jonathan Vipond, III, Judith P. Musselman, Baskin, Flaherty, Elliott–Mannino & Beren, P.C., Harrisburg, for petitioner.

John Kane, Chief Counsel, Howard Ulan, Asst. Counsel, Harrisburg, for respondent.

Before CRAIG and BARRY, JJ., and KALISH, Senior Judge.

CRAIG, Judge.

The Lackawanna–Susquehanna–Wayne Mental Health and Mental Retardation Program (Program) appeals an order of the Director of the Office of Hearings and Appeals of the Department of Public Welfare (DPW) holding that (1)

the requirement that a minimum occupancy rate of 85 percent be used to calculate reimbursement units for fee-for-service (per diem) funding of Community Residential Rehabilitation (CRR) programs applies to the Program; (2) money donated to the county in response to the Program administrator's letter of solicitation, and given to the Program by the county, is income to the Program; and (3) reimbursement for expenditures related to the administrator's enrollment in a doctoral program is not authorized.

The Program is a provider of mental health and mental retardation services in the three-county area. In 1984, DPW's Office of Operations Review conducted an audit of the Program for a four-year period ending on June 30, 1984.

Three of the findings contained in the Operational Audit Report are the subject of the Program's appeal. Those findings are: (1) $18,726 (reduced by stipulation to $10,499) in CRR expenditures for the 1981–82 fiscal year are not eligible for DPW financial participation; (2) the Program failed to report donations and gifts totalling $30,152 as income; and (3) a $19,327 reimbursement, received by the Program from DPW and the participating counties for the administrator's post-graduate education, is not authorized by DPW regulations or Program policies. The effect of implementing these findings is that a greater amount of local county funds will be required by the Program to provide services.

On November 20, 1986, an Attorney Examiner conducted a formal hearing on the Program's appeal, and recommended a decision holding that DPW properly disallowed $10,499 of reimbursement based on a published 85 percent occupancy rate factor, but that DPW erred in disallowing both the $30,152 in donations, which DPW characterized as contributions to the Program, and the $19,327 in expenditures related to the administrator's enrollment in a doctoral program.

The Program's appeal to DPW's Office of Hearings and Appeals followed. On July 14, 1988, the director of the Office issued an order adopting the examiner's recommen-

dation as to the reimbursement, but rejecting the donation and education recommendations, thereby affirming all three disallowances in the audit findings. The Program now appeals the same three findings to this court.

1.

■ The first issue is whether DPW properly disallowed $10,499 in reimbursements as a result of adhering to an 85 percent minimum occupancy rate, published in a Mental Health Bulletin, to calculate reimbursement unit amounts for CRR programs. If reimbursement unit amounts are calculated by assuming that at least 85 percent of service units are occupied, the unit amounts are necessarily lower than they would be if a lower occupancy rate were used as the cost devisor. The Program had used an actual occupancy rate (81% in this case) to calculate per diem reimbursement unit amounts at its CRR facility, thus reaching a unit amount higher than the amount which would be produced by an 85% rate.

Section 201(2) of the Mental Health and Retardation Act of 1966[1] authorizes DPW "[t]o make ... and enforce all regulations necessary and appropriate to the proper accomplishment of the mental health and mental retardation duties and functions imposed by this act." Under the legal authority of section 201(2), the County Mental Health and Mental Retardation (MH/MR) Fiscal Manual provides that "[r]ates or fees per unit of service may be published as a Departmental bulletin by the Department for selected services." 55 Pa.Code § 4300.115(a).

DPW's Mental Health Bulletin No. 6100–80–02, adopted on December 5, 1980, set forth the following with regard to fee-for-service funding of MH–CCR programs:

CRRS' funded on August 26, 1980, and any new CRRS's funded in the future may be program funded for the start-up year and the first full year of operation. In all other instances, CRRS's must be funded on a fee-for-service basis by County Programs.

---

1. Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended.* 50 P.S. § 4201(2).

County programs shall negotiate contracts with CRR providers for unit rates. In these negotiations, the County shall use, as a minimum, an average annual occupancy rate of 85%.

For CRR programs provided directly by County programs, expenditures shall be reported on a "per unit" basis in the annual expenditure report and occupancy shall conform to the 85% or higher requirement.

This policy is in conformance with the current 6100 MH/MR Program Fiscal Manual which was written prior to the establishment of MH–CRRS. The provisions of this policy will be specifically incorporated in the next revision of the 6100 Regulations.

In mid–1979, the Program contracted with Allied Services for the Handicapped (Allied) to provide community residential services at a fixed rate. The parties renewed their agreement in 1980 (the first full year of service). On July 1, 1981, the Program and Allied entered into a fee-for-service contract. Although the parties did not execute the 1981–82 contract until the middle of the year, the second full year of service began on the first day of 1981. Therefore, DPW's requirement of CRR's being funded on a fee-for-service basis applied to the Program for the entire 1981–82 fiscal year.

The Program contends that DPW abused its discretion by strictly applying the 85% occupancy rate because DPW later abandoned the policy when it revised the Title 6100 Regulations (*See* 55 Pa.Code §§ 4300.1–4300.161), and because DPW provided an additional $37,000 to the Program.

█ Although the revised MH/MR Fiscal Manual includes no required occupancy rate, a regulation "does not operate retroactively simply because some of the facts pertinent to its application came into existence prior to its effective date." *Mountain Rest Nursing Home, Inc. v. Department of Public Welfare,* 73 Pa.Cmwlth. 42, 45, 457 A.2d 600, 602 (1983). Regardless of DPW's independent decision to increase its allocation for the Program, and the subsequent change in DPW's policy, Bulletin 6100–80–02

states the applicable fee-for-service requirements for the 1981–82 fiscal year. Hence, DPW properly disallowed the $10,499 in expenditures claimed for that year.

## 2.

■ The second issue is whether donations to Lackawanna County, and given by the county to the Program, constitute income to the Program, thereby reducing the financial participation by DPW.

The audit report states that during the fiscal years 1981–82 and 1982–83, the Program failed to report "at least $30,152 of donations and/or gifts from seven (7) organizations that were contracted service providers to the L–S–W Counties MH/MR Program." The report concludes that the donors intended the money to be given to the Program.

The then current MH/MR Fiscal Manual provides the following relevant provisions:

§ 6165.2. County Matching Funds. Funds which are *restricted or obligated* in any way for the County Program are income to that Program and are used to reduce gross approved expenditures prior to the computation of the State-county shares. ...

. . . .

§ 6165.4. Donations and Gifts. All donations and gifts for the County Program made to program funded providers and counties shall be reported as income. ...

(Emphasis added).

There is no dispute that the Program Administrator, Michael Nazarenko, sought funds for the Program. A letter of solicitation sent out by Nazarenko requested specific donations in the form of checks to be made out to the Lackawanna County treasurer. The seven providers making donations complied with the request. The county then applied the funds towards the Program's needs.

DPW defines the two-step transaction as a sham, analogous to that which the U.S. Supreme Court ruled against in *Minnesota Tea Company v. Helvering*, 302 U.S. 609, 58 S.Ct. 393, 82 L.Ed. 474 (1938). The case involved stockhold-

ers receiving cash from a sale of corporate assets (pursuant to a plan of reorganization), but who had agreed to use the money to pay the debts of the corporate taxpayer. The Supreme Court held that the sale of assets constituted a taxable gain to the company, and not a distribution to the stockholders. In so holding, the Court noted that "the stockholders received the money not as a distribution for their benefit, but as a fund the equivalent of which they were *bound* to pass on, and did pass on to the creditors." *Id.* at 613, 58 S.Ct. at 394 (emphasis added).

Like the stockholders in *Minnesota Tea*, Lackawanna County here had an obligation to channel the money to the Program, if it was to keep faith with the donation request. Section 6165.2 expressly defines funds that are "restricted or obligated ... for the County Program" as income to the Program. Here the county received the donations as a virtual trustee for the Program. Therefore, we agree the $30,152 in donations to the county did constitute income to the Program.

3.

■ The final issue is whether the Program complied with its own policies and DPW regulations in receiving reimbursement for expenditures related to Nazarenko's enrollment in a Mental Health Policy and Administration doctoral program at New York University.

The Program contends that the $19,327 in tuition, salary, subsistence and lodging expenses incurred by Nazarenko should not be disallowed because the expenses are reasonably related to staff development. The Program also asserts that it had proper authority to be reimbursed because a memorandum from the Deputy Secretary of the Office of Mental Health "advised county administrators of the availability of such program," and because the Program's Advisory Board, which includes the County Commissioners of the three counties, approved the recommendation of the Personnel Committee to reimburse Nazarenko. The Program concedes that the memorandum made no mention of reimbursement.

The MH/MR Fiscal Manual in effect at the time in question provides the following:

§ 6123. Staff Development.

The Department will participate in the cost of training of staff to the extent that the training is related to the objectives of the County Program or is essential for the continuation or improvement of the program. Staff development includes the training of personnel through in-service instruction and recognized professional education programs, or through attendance at State, Regional, and National meetings, seminars, or conferences.... Expenses for staff development shall be approved by the appropriate County Authority or his designee.

Section 6103(c) of the applicable MH/MR Fiscal Manual defines appropriate county authority as

The county official who by law, or through the delegation of duties by the local authorities, is responsible for certain functions related to the administration of the County Program. The appropriate County Authority may be, but is not limited to, the local authority's and/or the Administrator.

DPW determined that section 6123 "was not contemplated to include a doctoral degree program but refers to brief programs such as '... meetings, seminars or conferences.'" This court has recognized that "an agency's interpretation of its own regulations is entitled to controlling weight so long as that interpretation is not clearly erroneous and is consistent with the regulation and with the agency's enabling legislation." *R.A. Freudig Associates v. Commonwealth of Pennsylvania, Insurance Department,* 110 Pa.Cmwlth. 311, 317–18, 532 A.2d 509, 513 (1987).

Furthermore, the record indicates that two of the three commissioners did not attend the meeting on the day which the Program alleges the board approved the reimbursement. The Program asserts that a reading of the minutes, to which no members objected, of the previous meeting constitutes approval by the Board of Commissioners, but such a reading is so general in nature that we cannot agree

with the Program's conclusion that the Board knowingly and affirmatively approved the reimbursement.

Section 6123 limits reimbursable staff development expenditures for training related to the objectives of the Program or essential for the continuation or improvement of the program. However, without assurances that Nazarenko will remain with the Program after completing his post-graduate education, the Program will not necessarily benefit from having Nazarenko pursue his degree—a degree conferring a far greater benefit to the individual than to the present employer. Therefore, DPW properly disallowed the $19,327 in expenditures for the administrator's doctoral program.

Accordingly, the order of the Office of Hearings and Appeals should be affirmed.

KALISH, Senior Judge, concurs in the result only.

### ORDER

NOW, June 21, 1989, the order of the Director of the Office of Hearings and Appeals of the Department of Public Welfare, dated July 14, 1988, at Docket Nos. 15–86–001, 15–86–002, 15–86–003 and 15–86–004, is affirmed.