Charles M. EMORY, Jr., and
Johnnie K. Emory
v.
UNITED STATES of America.
Civ. A. No. 7907.

United States District Court,
E. D. Tennessee, N. D.
Dec. 12, 1972.

Affirmed, 6 Cir., 490 F.2d 208.

---

1052

---

Perry Shields, Knoxville, Tenn., for plaintiffs.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., John F. Murray, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action was instituted to recover federal income taxes and interest paid by plaintiffs. 28 U.S.C. § 1346(a)(1).

Charles M. Emory, Jr., and David E. Richards, deceased, operated a construction business for nineteen years prior to Richards' death. They had entered into a written partnership agreement, which was in effect at the time of Richards' death. That agreement provided for dissolution in the event of a partner's death. The pertinent portions of the dissolution provision read as follows:

"13(c) In the event of the death of a partner, the deceased partner's *interest in said partnership shall be sold*

*to and purchased by* the surviving partner in the following manner:

"3. Upon the death of either Charles M. Emory, Jr., or David E. Richards the survivor *shall purchase* and the estate of the decedent *shall sell* all of the deceased partner's *interest in said partnership* assets except as hereinafter provided now owned or hereinafter acquired by the partner.

"4. The *purchase price* of the deceased partner's interest shall be its book value at the end of the fiscal year preceding the death of such partner, *plus a sum equal to* twenty-five per cent of the net earnings of the partnership for a three year period following the death of the partner . . . " (Emphasis supplied)

Following Richards' death on April 3, 1964, Emory discharged his obligations under paragraph 13. He paid to the estate by checks drawn on the dissolved partnership account the adjusted book value of Richards' interest and he made payments by checks drawn on the dissolved partnership account totaling 25% of the net earnings of the business for the three-year period ending March 31, 1967. Emory also acknowledged receipt of Richards' interest in the partnership assets in a bill of sale wherein the executor of Richards' estate acknowledged receipt of all sums due

" . . . growing out of the purchase of D. E. Richards' interest in said partnership assets under the terms of said agreement with the sole exception of the payment of 25% of the net earnings of the business for 3 years following the death of D. E. Richards . . . "

Emory filed partnership tax returns for the years 1964 through 1967, 26 U. S.C. § 6031. These returns reported 25% of the so-called partnership income for the three-year period following Richards' death as ordinary income belonging to the estate of D. E. Richards. Copies of these returns were sent to the executor of Richards' estate whose officer testified that he received, read and filed them. Consistent with the so-called partnership returns, Emory reported as personal ordinary income for that period 75% of the so-called partnership ordinary income. The fiduciary returns for Richards' estate, filed by its executor, disregarded the information on the so-called partnership return and reported no partnership income or profits from a business or trade. After an audit by the tax service, deficiencies were assessed against plaintiffs for taxes on the 25% of the business earnings paid to Richards' estate as ordinary income to Emory. Plaintiffs paid these assessments plus interest and brought this suit to recover taxes illegally assessed. 28 U.S.C. § 1346(a)(1).

Plaintiffs' theory is that the amounts paid Richards' estate from the firm's net earnings following his death constitute payments made in liquidation of the interest of a deceased partner, the amount of which was determined with regard to the income of the claimed partnership. Plaintiffs contend that these payments were the distributive share of the partnership income belonging to Richards' estate and, as such, not income to plaintiffs. 26 U.S.C. §§ 736(a), 761(d).

Defendant's theory is that the partnership agreement provided for a purchase and sale arrangement between the two partners; that Title 26 U.S.C. § 741 controls and that Emory, the surviving partner, is liable for 100% of the net earnings of the business for the three-year period in question.

Thus, the basic question presented is whether the payments made to the Richards' estate from the earnings of the business were made in liquidation of a partnership interest or were made as a part of a capital transaction.

The Internal Revenue Code, Title 26 U.S.C., defines "liquidation of a partner's interest" as the termination of a partner's entire interest in a partnership by means of a distribution, or a series of distributions, to the partner by the partnership. § 761(d).

The Code also provides that payments in liquidation of a partner's interest, to the extent they are an exchange for the interest of the withdrawing partner in the partnership property, are considered distributions of partnership assets. § 736(b). Gain or loss is recognized on these distributions as provided in § 731. 26 C.F.R. § 1–736(b)(1). However, liquidation payments, the amounts of which are determined with regard to partnership income, are considered distributive shares of the partnership income belonging to the withdrawing partner. § 736(a). Distributive shares are considered ordinary income to the withdrawing partner. The recipient of income under § 736 received during a taxable year "must segregate that portion of each such payment . . . treated as a distribution under section 736(b) from that portion treated as a distributive share . . . under section 736(a)." 26 C.F.R. § 1–736(b)(5).

In contrast to a liquidation, the sale of an interest in a partnership is a taxable event whereby gain or loss is recognized to the transferor. § 741; see also § 751. Thus, by designating the dissolution as a sale the withdrawing partner can avoid paying any tax at ordinary income rates on the proceeds of the transaction, thereby placing the entire ordinary income tax liability for partnership income on the remaining partners.

We suspect that Emory and Richards did not consider the tax consequences of their partnership agreement when they reduced it to writing and executed it in 1956. After Richards' death the accounting firm that prepared the partnership returns, as well as Emory's personal returns, determined that § 736 provided more advantageous tax consequences for plaintiffs and prepared the partnership return in accordance with that determination. The executor of Richards' estate knew that Emory was utilizing § 736 in lieu of § 741 but chose to treat the payments from the partnership under § 741. Clearly, the executor failed to divide the payments as required in Regulation § 1–736–1(b)(5) if he were using § 736. In addition, the language he used in the bill of sale indicates his intention to treat all payments from the business as the purchase price of Richards' interest in partnership property.

Plaintiffs argue that the payments equal to 25% of the partnership income constitute a distributive share of the partnership income owned by Richards' estate. They say, in effect, that the use of a formula to determine the value of the deceased partner's interest in the partnership property with a separate provision granting his estate a portion of partnership income following his death indicates an intention to utilize § 736 and treat the transaction as a liquidation. They also argue that the instrument is ambiguous in this regard thus permitting the admission of extrinsic evidence.

Defendant contends that the instrument unambiguously provides for a sale of the deceased partner's interest and utilization of § 741. It appears to base its position in part on the proposition that the words "purchase", "sell", and "purchase price" in the agreement are conclusive evidence that a § 741 sale was contemplated by the parties.

The Congressional purpose behind alternative methods of taxing the winding up of a partnership appears to be an attempt to allow partners to allocate among themselves the tax burden for partnership income. The partners indicate their decision " 'by the choice of words in the partnership agreement.' " Foxman v. Commissioner, 41 T.C. 535 (1964) aff'd 352 F.2d 466 (C.A. 3, 1965), quoting V. Zay Smith, 37 T.C. 1033, 1038. A strong reason for strictly construing terms such as "sale", "exchange", "buy", "purchase", and "sell" as denoting a § 741 transaction and terms like "liquidation", "winding up", "account", "liquidate", "settle", and "adjust" as denoting a § 736 transaction is the public need for certainty in the tax law. Liberal construction of these terms

will create unnecessary litigation and confusion as conflicting case law evolves.

■ There are reasons more substantial than words of art for believing that the parties to the agreement in question intended for the deceased partner's interest to be sold to the surviving partner instead of being liquidated. The purchase price provision refers to the price of the deceased partner's interest as a single entity although the specific amount is derived through a two-part formula.[1] If § 736 were contemplated, the book value should have been expressed as an exchange for the interest in the partnership property and clearly distinguished from that portion of the payments based on partnership income. See T.C.A. §§ 61–123, 61–125. The failure to make this distinction shows an intention to employ a § 741 sale.

The failure to clearly indicate whether § 736 or § 741 controls the tax consequences of this agreement strongly suggests the decision to disregard those consequences. Therefore, it might be helpful to look at the elementary meanings of "sale" and "liquidation". See Commissioner v. Danielson, 378 F.2d 771, 775, 779 (C.A. 3, 1967).

■ Although the economic and legal results may be the same, there is a fundamental difference between a sale and a liquidation. A sale is a bilateral act of parties acting at arms' length which concludes with a property exchange. Inherent in a sale is a fixed or readily ascertainable amount of money, which is traded for something of value. In contrast, a liquidation is the process of reducing assets to cash, discharging liabilities and dividing surplus or loss. If the business continues, surplus or loss is determined by an accounting; and, the remaining partners pay the withdrawing partners for their interests. Thus, in a liquidation the amount received is contingent on the financial condition of the business at the time of dissolution. It is not a fixed sum or formula.[2] By this test the partnership agreement in the instant case was a sale.

■ Plaintiffs further contend that if the sums paid to the Richards' estate are not excludable from plaintiffs' taxable income, plaintiffs are entitled to add the amount of such sums to the cost basis of equipment and other depreciable assets acquired by them from the partnership and that the deduction for depreciation should be adjusted for the years 1964 and following. We do not agree. The sum equal to 25% of net earnings of the Emory and Richards business for three years represented the value of Richards' interest in the going business concern in excess of the book value of that interest. It did not represent Richards' interest in the depreciable assets of the business at his death. That part of the adjusted basis of the partnership property which Richards was entitled to deduct as depreciation has, since his death, been deducted by Emory. Accordingly, he is not entitled to additional depreciation for these years.

For the reasons indicated, plaintiffs' claim for a tax refund is disallowed.

The parties will present an order in conformity with the views herein set forth.

---

1. "The purchase price . . . shall be . . . plus an amount equal to . . . ."

2. A § 736 liquidation is not a pure liquidation since that section encompasses advance agreements in the nature of a sale. This fact is a strong indication that Emory and Richards would have clearly provided for a § 736 liquidation had that been their intention.