**In re Mary Kathryn SHEPHERD, Debtor.**

**In re Griffin Enterprises, Debtor.**

**Bankruptcy Nos. 95–29173–K, 96–30091–K.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Nov. 24, 1998.

W. Ernest Norcross, Cordova, TN, for Mary Kathryn Shepherd.

Barbara M. Zoccola, Memphis, TN, Assistant United States Attorney.

John K. Byrne, Culver City, CA, for James A. Griffin.

Michael J. Martineau, Washington, D.C., Trial Attorney, Tax Division.

## ORDER GRANTING DEBTORS'
## SECTION 505(a)(1)
## MOTION

DAVID S. KENNEDY, Chief Judge.

This matter came on to be heard, on November 24, 1998, upon the Motion of Mary Kathryn Shepherd ("Shepherd") and Griffin Enterprises (the respective debtors in possession in the above jointly administered cases), filed pursuant to the provisions of section 505(a)(1) of the United States Bankruptcy Code (hereafter "Debtors' Section 505 Motion"), to have the Court determine that there will be no Federal tax liabilities result-

ing from the transfers to the transferees as set forth in a Settlement Agreement by, between, and among Mary Kathryn Shepherd, James Arthur Griffin, and Griffin Enterprises (hereafter the "Shepherd/Griffin Settlement Agreement"), the Trial Brief filed by the Debtors in support of Debtors' Section 505 Motion, the United States' Response to Trial Brief Submitted by Mary Kathryn Shepherd and Griffin Enterprises (hereafter the "Response of the United States"), the Debtors' reply to the Response of the United States, the Stipulated Facts Relative to the Debtors' Section 505 Motion filed herein by the United States and the Debtors (hereafter the "Stipulated Facts"), the testimony of Shepherd, the testimony of Internal Revenue Service Agent Robert Watson, the statements of the respective counsel for the debtors in possession and the United States, and upon the entire record in these causes, based upon all of which the Court, finds, concludes, and orders as follows:

## FINDINGS OF FACT

1. Prior to October 21, 1983, James Arthur Griffin ("Griffin") and Shepherd agreed that they owned jointly the assets listed on "Schedule "A" to the Partnership Agreement" (hereafter the "Shepherd/Griffin Jointly Owned Assets"). (A copy of Schedule "A" of the Partnership Agreement is part of Exhibit "A" of the Stipulated Facts.)

2. On or about October 21, 1983, Griffin and Shepherd entered into a partnership agreement pursuant to which the partnership, Griffin Enterprises, was created.

3. A copy of the partnership agreement, dated October 21, 1983, is attached as Exhibit "A" to the Stipulated Facts (hereafter the "Griffin Enterprises Partnership Agreement").

4. Section No. 3 of the Griffin Enterprises Partnership Agreement provided in pertinent part: "This Partnership is being formed in order to hold title to jointly owned property (real, personal, and mixed)."

5. Section No. 18 of the Griffin Enterprises Partnership Agreement provides in pertinent part: "In the event of a divorce, this agreement shall constitute a final and complete division of the property rights of the Partners, and shall be in lieu of any other claims between the Partners for alimony or claims to other individual property rights."

6. Subsequent to the creation of Griffin Enterprises, Shepherd filed a complaint for divorce in Division 6 of the Circuit Court of Shelby County, Tennessee (the "Circuit Court") in the case now styled *Mary Kathryn Shepherd v. James Arthur Griffin,* 929 S.W.2d 336 (Tenn.App.1995), which case was docketed 94294–6 R.D. in the Circuit Court and C.A. 02A01–9406–CV–00130 in the Court of Appeals of Tennessee, Western Section at Jackson (the "Tennessee Court of Appeals") (hereafter the "State Litigation").

7. The Final Decree of Divorce was entered in the State Litigation on June 13, 1984.

8. On March 13, 1984, Griffin Enterprises was dissolved.

9. The Circuit Court became the trial forum in which Shepherd and Griffin have litigated issues relative to the accounting and proper distribution of the assets belonging to Griffin Enterprises prior to March 13, 1984, the date on which Griffin Enterprises was dissolved.

10. The Honorable George H. Brown, Jr. (hereafter "Judge George Brown"), pursuant to the terms of an October 23, 1987 order styled "Order of Dissolution of Partnership & Distributing Partnership Assets" (the "October 23, 1987 Circuit Court Order"), ordered, *inter alia,* that (a) Griffin Enterprises was dissolved on March 13, 1984; (b) Griffin was not a partner of Griffin Enterprises after March 13, 1984; and (c) all of the assets owned by Griffin Enterprises, prior to March 13, 1984, were the separate property of Shepherd on and after March 14, 1984.

11. A copy of the October 23, 1987 Circuit Court Order is attached as Exhibit "B" to the Stipulated Facts.

12. In reliance on the October 23, 1987 Court Order, Shepherd filed an Amended U.S. Individual Income Tax Return for 1984 and treated all assets owned prior to March 13, 1984 by Griffin Enterprises, as assets owned separately by her.

13. In Shepherd's U.S. Tax Returns respectively for 1985, 1986, 1987, 1988, 1989, 1990,

1991, 1992, 1993, 1994, 1995, 1996 (hereafter together with the 1984 U.S. Amended Tax Return, collectively referred to as "Shepherd's Tax Returns"), Shepherd also treated all assets owned, prior to March 13, 1984 by Griffin Enterprises, as assets owned separately by her.

14. Copies of Shepherd's Tax Returns have heretofore been delivered to Barbara Zoccola, Assistant United States Attorney General for the Western District of Tennessee.

15. Shepherd's Tax Returns have been examined by the Internal Revenue Service ("IRS").

16. After an examination of Shepherd's Tax Returns, the Commissioner determined that no additional Federal income tax, interest, or penalties are owed by Shepherd beyond the amounts reflected on Shepherd's Tax Returns.

17. In Shepherd's 1997 U.S. Tax Return, Shepherd also treated all assets owned, prior to March 13, 1984 by Griffin Enterprises, as assets owned separately by her.

18. Griffin appealed the October 23, 1987 Circuit Court Order to the Tennessee Court of Appeals.

19. In a published opinion, in the case styled *Shepherd v. Griffin,* 776 S.W.2d 119 (Tenn.App.1989), the Tennessee Court of Appeals reversed Judge George Brown and ruled that: "[u]ntil termination of the partnership, the interest of the partners in partnership assets, profits, liabilities and losses do not change, even though they exist at or occur after dissolution." *Id.* at 122.

20. On remand, Judge George Brown ruled, *inter alia,* that Griffin had (a) allowed Shepherd, individually, to continue the business of the partnership and (b) elected to be treated as a creditor in a buy-out pursuant to TCA § 61–1–141.

21. Judge George Brown's rulings and order, on remand, were again appealed to the Tennessee Court of Appeals.

22. From August 30, 1995, until a hearing before this Court, on August 9, 1996, Shepherd asserted that she owned the assets described in section I.F.(a)–(d) of the Shepherd/Griffin Settlement Agreement attached as Exhibit "D" to the Stipulated Facts (hereafter the "Assets").

23. On December 21, 1995, the Tennessee Court of Appeals entered an opinion in the State Litigation (hereafter the "December 21, 1995 Appellate Opinion"), a copy of which is attached as Exhibit "C" to the Stipulated Facts.

24. In the December 21, 1995 Appellate Opinion, the Tennessee Court of Appeals ruled that Griffin had impliedly consented to Shepherd's continuation of Griffin Enterprises' former business under the trade name of MKS Enterprises.

25. In the December 21, 1995 Appellate Opinion, the Tennessee Court of Appeals ruled that "[t]he assets of the continuing business shall be treated as partnership assets until final settlement of the accounts, with actual distribution to Griffin."

26. In the December 21, 1995 Appellate Opinion, the Tennessee Court of Appeals ordered the Circuit Court, in the State Litigation, "... to conduct a further accounting until final distribution."

27. As of the date hereof, there has not been a final judicial determination of how the assets of Griffin Enterprises should be distributed.

28. On August 30, 1995, Shepherd filed a voluntary petition, in the Shepherd Case, under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

29. On August 13, 1996, Shepherd filed an involuntary petition, under Chapter 11 of the Bankruptcy Code, against Griffin Enterprises in this Court.

30. On September 13, 1996, this Court entered an order granting relief in the Griffin Enterprises Case.

31. On October 20, 1997, this Court ruled that the Agreement, dated ____ September, 1997, by, between, and among Mary Kathryn Shepherd, James Arthur Griffin, and Griffin Enterprises (hereinabove and hereafter the Shepherd/Griffin Settlement Agreement, a copy of which is attached as Exhibit "D" to the Stipulated Facts) was a valid and binding agreement between and among Shepherd, Griffin, and Griffin Enterprises, and enforce-

able in accordance with the terms and provisions thereof.

32. On October 20, 1997, this Court also approved the Shepherd/Griffin Settlement Agreement.

33. The Shepherd/Griffin Settlement Agreement provides for the distribution of certain of the assets to Griffin, individually, and for a distribution of certain of the assets for the benefit of Griffin and Shepherd and for the benefit of the children born to Griffin and Shepherd upon the death of Shepherd.

34. In section I.C., pages 4 and 5 of the Shepherd/Griffin Settlement Agreement, Shepherd and Griffin have agreed that (a) Shepherd has been authorized previously to individually depreciate and amortize those Assets that are depreciable assets under the Internal Revenue Code of 1986 (the "Code"); (b) Shepherd shall be permitted to continue to depreciate and amortize such Assets until the Effective Date (as defined in the Shepherd/Griffin Settlement Agreement); and (c) Shepherd shall retain all rights to all tax loss carry forwards (as defined in the Code) accruing to the Effective Date.

35. The distribution by Griffin Enterprises of the Assets to, or for the benefit of the former partners of Griffin Enterprises, is being done to liquidate and terminate Griffin Enterprises.

36. All of the Assets being distributed in the termination of Griffin Enterprises are assets described in Schedule "A" to the Partnership Agreement (attached to Exhibit "A" to the Stipulated Facts).

37. All of the Assets being distributed are assets that were conveyed to Griffin Enterprises by Shepherd and Griffin upon the creation of Griffin Enterprises on October 21, 1983.

38. Griffin Enterprises has not filed Federal partnership tax returns.

39. Pursuant and subject to the terms of the Settlement Agreement, the Southhampton III Apartments located at 5505 Ackerfield Avenue, Long Beach, California (hereafter the "Southhampton Apartments") are to be distributed to Griffin.

40. As of December 31, 1997, the amount of debt owed on the Southhampton Apartments was $2,098,794.40.

41. Shepherd has agreed in open Court that, after the date of the transfers set forth in the Shepherd/Griffin Settlement Agreement (hereafter the "Transfers"), that the Net. Operating Losses claimed by Shepherd for the 1984 U.S. Tax Year through the year of the Transfers will not be available to Shepherd for any tax years after the year of the Transfers.

42. Shepherd has also agreed in open Court that all prior but unused investment tax credits, charitable contributions, and passive losses will not be available to Shepherd for any tax years after the year of the Transfers.

43. The IRS has agreed that the Transfers will create no Federal tax liabilities for either Shepherd, Griffin, or Griffin Enterprises.

44. The IRS has agreed that, after the transfer to Griffin of the Southhampton Apartments, those apartments will have a cost basis in the hands of Griffin of $2,098,-794.40.

45. The IRS has agreed that Shepherd owes no Federal income tax, interest, or penalties other than that which is reflected on the returns filed by Shepherd for the taxable years ended December 31, 1984 through December 31, 1996 inclusive.

## CONCLUSIONS OF LAW

46. Such of the foregoing Findings of Fact as are deemed to be Conclusions of Law are hereby adopted as Conclusions of Law.

47. This Court has jurisdiction, pursuant to section 505(a)(1) of the United States Bankruptcy Code, to determine the tax issues presented to this Court in Debtors' Section 505 Motion.

48. The instant proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). *In re Kreidle,* 143 B.R. 941 (D.Col.1992); *In re Goldblatt Bros. Inc.,* 106 B.R. 522, 526 (Bankr.N.D.Ill.1989).

49. The issues presented by Debtors' Section 505 Motion are ripe for judicial determination under 28 U.S.C. § 2201. *In re Kilen,* 129 B.R. 538 (Bankr.N.D.Ill.1991).

50. Section 761(d) of the Internal Revenue Code of 1986 (the "1986 Code") defines the liquidation of a partner's interest in a part-

nership as follows: "[T]he term 'liquidation of a partner's interest' means the termination of a partner's entire interest in a partnership by means of a distribution, or series of distributions, to a partner by the partnership."

51. Sections 731 through 737 of the 1986 Code apply to distributions by the partnership and the tax consequences, if any, to the partners of the partnership.

52. Section 736(b) of the 1986 Code provides that: ". . . . payments in liquidation of a partner's interest, to the extent they are in exchange for the interest of the withdrawing partnership property, are considered distributions of partnership assets." See *Emory v. United States of America*, 374 F.Supp. 1051, 73–1 USTC ¶ 9148, at 80 (E.D.Tenn. 1973).

■ 53. Section 731 of the 1986 Code determines the tax consequences of liquidating distributions. Sections 731(a) and (b) provide in pertinent part as follows:

(a) **Partners.**—In case of a distribution by a partnership to a partner—

(1) gain shall not be recognized to such a partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution.

. . .

(b) **Partnerships.**—No gain or loss shall be recognized to a partnership on a distribution to a partner of property, including money.

54. Distributions of property by the partnership to partners, as part of liquidating distributions, do not create a taxable event for either the partners or the partnership under sections 731 and 736(b) of the 1986 Code. *Crenshaw v. United States of America*, 315 F.Supp. 814 (N.D.Ga.1970).

55. Shepherd and Griffin have agreed that the remaining Shepherd/Griffin Jointly Owned Assets (hereafter the "Assets") are owned by Griffin Enterprises. See section I.B., at 4, of the Shepherd/Griffin Settlement Agreement attached as Exhibit "D" to the Stipulated Facts.

56. Regardless of how the Assets are legally titled, those Assets are to be treated as assets of Griffin Enterprises until final settlement of the partners' accounts and actual distribution of those remaining assets to the partners. December 21, 1995 Appellate Opinion, at 9, attached as Exhibit "C" to the Stipulated Facts.

■ 57. The Transfers (set forth in the Shepherd/Griffin Settlement Agreement) will be distributions of property by Griffin Enterprises as part of liquidating distributions under sections 731 and 736(b) of the 1986 Code, and will not create a taxable event for either Shepherd, Griffin, or Griffin Enterprises.

■ 58. This Court has the power, under section 105 of the Bankruptcy Code, to enter an order giving effect to mutual agreements reached between the United States and the Debtors relative to the Transfers and the tax consequences thereof.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

A. The Transfers (set forth in the Shepherd/Griffin Settlement Agreement) will create no Federal tax liabilities for either Shepherd, Griffin, or Griffin Enterprises.

B. Shepherd owes no Federal income taxes, interest, or penalties for the taxable years ended December 31, 1984 through December 31, 1996 other than that which is reflected on the returns filed by Shepherd for the taxable years ended December 31, 1984 through December 31, 1996 inclusive.

C. Subject to and after the transfer to Griffin of the Southhampton Apartments, those apartments will have a cost basis, for Federal income tax purposes, in the hands of Griffin of $2,098,794.40.

D. Subject to and after the date of the Transfers (set forth in the Shepherd/Griffin Settlement Agreement), the Net Operating Losses claimed by Shepherd for the 1984 U.S. Tax year through the year of the Transfers will not be available to Shepherd for any tax years after the year of the Transfers.

E. Subject to and after the date of the Transfers (set forth in the Shepherd/Griffin Settlement Agreement), all prior but unused investment tax credits, charitable contributions, and passive losses will not be available to Shepherd for any tax years after the year of the Transfers.

ALL OF WHICH IS ACCORDINGLY ORDERED.